WILLIAM KIMBALL *v.* RUTLAND & BURLINGTON RAILROAD COMPANY.

*Carriers by Railway. Limitation of Liability. Notice. Special Contract, its effect. Declaration.*

A Railway Company that transport cattle and live stock for hire, for such persons as choose to employ them, thereby assume and take upon themselves the relation of common carriers,and with the relation,the duties and obligations which grow out of it; and they are none the less common carriers from the fact, that the transportation of cattle is not their principal business or employment.

A common carrier may, by special contract with the owner of the property to be transported, so change his relation, as to become a private carrier, and when the relation is so changed, his liability is measured by the specific provisions of his contract; but a general notice to the public, limiting his obligations as a common carrier, will afford no evidence of such contract, even if the existence and contents of such notice is brought home to the party.

And where a Railway Company, (the defendants,) for a given reward or hire, proffered to become, and to assume the relation of common carriers; and for a less reward or hire proffered, in the exercise of reasonable care, to furnish the necessary means of transportation, such as cars, motive power, &c., that the owner might be his own carrier; thus graduating the rate of compensation to the degree of risk assumed, and leaving either mode of transportation to to be adopted at the option of the owner of the stock; and the plaintiff, who had cattle to be transported, elected to pay the lower rate—*held*—that he was bound by his election, and that he could not hold the company as common carriers, for damage to his cattle.

In the present case, a special contract was found, under which the defendants, in the exercise of reasonable care, were to furnish the plaintiff with a suitable car, and other necessary means of transportation, and the plaintiff was to assume the risk, and general responsibility of the transportation of his cattle—*held*—under this contract, that the defendants were not common carriers, but were *pro hac vice* private carriers merely.

And the plaintiff having declared against the defendants as common carriers, the question whether such a special contract was made, is purely one of law.

And when the relation is changed from common to private carriers by special contract, the company not being liable as common carriers, cannot be declared against as such, but the action must be on the contract, or for a breach of duty arising out of the contract.

ACTION ON THE CASE against the defendants as common carriers. This case was originally commenced before a justice of the peace, and was brought to the county court by appeal.

The declaration was as follows :

" In a plea of the case, whereupon the plaintiff declares and " says, that on the 11th day of November, A. D. 1851, the de- " fendants were, and ever since have been, and still are common " carriers of goods for hire, from Burlington, Vermont, and inter- " mediate stations on the Rutland & Burlington Railroad, between " that place and Bellows Falls, Vermont, to Cambridge or a station " called Porters, in the state of Massachusetts, and that the plaintiff, " on the day and year last aforesaid, at said Brandon,—there being an " intermediate station as aforesaid at said Brandon,—caused to " be delivered to them, the defendants, and the defendants accept- " ed and received of and from the plaintiff, a certain number of " neat cattle, to wit, cows, oxen, yearlings, and two year old cat- " tle, to the number of thirty-one, and to the amount of thirteen " thousand three hundred and thirty pounds weight, belonging to " the plaintiff, of the value of five hundred dollars, to be safely " and securely freighted, carried and conveyed by them, the de- " fendants, from Brandon aforesaid, to Cambridge or Porters afore- " said, for a certain reasonable reward, to be paid by the plaintiff to " them, the defendants. Yet the defendants, not regarding their " duty as common carriers, as aforesaid, but contriving and intend- " ing to injure the plaintiff, did not and would not safely and se- " curely freight, carry or convey said cattle from Brandon afore- " said, to Cambridge or Porters aforesaid, nor there at said Cam-

" bridge or Porters safely or securely deliver the same, to him, the
" plaintiff, but on the contrary thereof, the defendants so carelessly
" and negligently behaved and conducted in the premises, that by
" reason of their said negligence, carelessness and default, divers,
" to wit, to the number of five of said cattle, of the value of nine-
" ty dollars, were killed, and wholly lost to the plaintiff, and the
" remainder thereof were so greatly injured, that by reason there-
" of they were then and there greatly lessened and depreciated in
" value, and by reason of the premises, also, the plaintiff was put
" to great trouble, and subjected to loss of time, to wit, to ten days
" time ; and paid out divers large sums of money in doctoring and
" taking care of said cattle, of all which the said defendants had
" due notice."

Plea, the general issue, and trial by jury.

On the trial the plaintiff was examined as a witness, and stated
that he made a contract with the agent of the defendants, for the
use of a car to convey cattle from Brandon, Vermont, to Porters,
(Cambridge,) Mass. ; and that he was to have the same privileges
as others had, agreeably to the freight tariff published by the de-
fendants, which was as follows : " LIVE STOCK *will be reckoned*
" *at 2d class rates, according to the tonnage specified below.*

" One OX, $1\frac{1}{2}$ tons ; 2 Oxen, 2 tons ; 3 Oxen $2\frac{1}{2}$ tons ; and
" over 3 Cattle, 1 ton each, or $6\frac{2}{3}$ tons per car load of 8 wheels ;
" $3\frac{1}{2}$ tons per car load of 4 wheels.

" One HORSE $1\frac{3}{4}$ tons ; 2 horses $2\frac{1}{2}$ tons ; and over 2 horses,
" 1 ton each, or $6\frac{1}{4}$ tons per car load of 8 wheels, and in all
" cases to be accompanied by the consignee.

" SHEEP, SHOATS and CALVES, 5 · tons per car load of 8
" wheels ; and $2\frac{3}{4}$ tons per car load of 4 wheels ; less than car
" load of four wheels 150 lbs. each.

" At these rates, the owners are to load, unload, and feed
" their stock, at their own expense and risk, and assume all risk
" "that animals may cause to each other or themselves or damage in
" consequence of their breaking from the cars or otherwise. No
" risk will be assumed by the corporation nor damage allowed, un-
" less especially agreed to, when the animals are taken for trans-
" portation, and an additional price of 25 per cent upon tariff rates
" paid. One driver free, when accompanying his stock, to take
" care of it, and paying the regular price as per tariff ; and in no,

" case will he be allowed to ride in the passenger train, without " paying regular fare.

" A ticket will be furnished each drover, or person entitled to a " free pass on the freight train, for the sole purpose of taking care " of his stock, by the agent of the station where the stock is load- " ed; and the conductors of freight trains will observe this, and " be governed accordingly. No risk will be assumed by the cor- " poration for the personal safety of such person.

" ☞ The *Charges* upon live stock going to Porters, by cattle " trains, must in all cases be *prepaid*."

And also agreeably to the ticket which was delivered to the plaintiff, by the said agent, which ticket gave the plaintiff a free pass on the freight train for that trip, and on the back of the said ticket was the following. " At the rates charged as per tariff, no " risk will be assumed by the corporation for any injury to live " stock which they may do each other or themselves, or any dam- " age caused by breaking from the cars or otherwise. Nor will " they hold themselves liable for damage caused by accidental de- " lays or weather; but the corporation will use all reasonable care " and diligence.

" By paying 25 per cent advance upon tariff rates, the corpora- " tion will assume the responsibility of safely delivering live stock " at its destination or the station where way-billed.

" One driver free for each drove or each lot of stock, when pay- " ing full price, according to the rates of transportation, and for " the sole purpose of taking care of the stock; but no risk will be " assumed by the corporation for his personal safety.

" Transportation Office, R. & B. R. R. Co., June, 1851."

(Copies of the said tariff and ticket, as above recited, were put into the case.)

The plaintiff also testified, that he was to put into the car as many cattle as he pleased; and that he put in thirty head of young cattle, two and one years old of his own, and then a cow of one Spaulding, making thirty-one cattle; that there was in the cattle train a car appropriated for the use of those having the care of the cattle on board, in which the plaintiff rode; that he saw his cattle at Pittsford, and Rutland, and again at Chester, and that they were then in good condition, that he did not see them again till he arrived at Porters; that the car in which the plain-

tiff rode, was in the rear, and his cattle were in the forward part of the train; and that between Chester and Bellows Falls, the train was separated, and afterwards continued in two trains until they arrived at Porters; that in consequence thereof, the plaintiff was unable to have any care of his cattle after they left Chester; that when the cattle arrived at Porters, they were in a very bad condition, several were down and unable to get up, and four others were dead. ·

It appeared, that the plaintiff did not put any straw or gravel in the car before putting in the cattle, which, the evidence tended to show was generally done, by those having cattle transported upon the railroad. The plaintiff testified that he never had any cattle transported by railroad before. There was no evidence tending to show, that the plaintiff's cattle had received any injury in the car, except what was occasioned by their struggling and slipping in the car, and such as was inflicted by the cattle upon each other.

The plaintiff contended, and requested the court to charge the jury, that if by reason of the separation of the train, the plaintiff was prevented from having that oversight and care of his cattle that he otherwise would have done, (and which was contemplated by the tariff and ticket aforesaid,) and thereby avoiding the injury to the cattle, the defendants were liable for the damages the plaintiff had sustained by such injury.

But the court,—PIERPOINT, J., presiding,—intimated to the plaintiff's counsel, that the jury would be instructed that if they found all the facts, which the evidence tended to prove, and that the damages sustained were sustained solely by the separation of the train as aforesaid, and injuries inflicted by the cattle on themselves or each other, that the verdict of the jury should be for the defendants.

Whereupon the plaintiff submitted to a non-suit, with leave to move to set aside the non-suit, if the ruling of the court is erroneous. And upon motion the court refused to set aside the nonsuit.

To which decision the plaintiff excepted.

*Parker & Nicholson* for the plaintiff.

I. That the injury complained of was the result of culpable

negligence on the part of the defendants or their servants is not questioned; and that the plaintiff ought to have some remedy is conceded. The defect, if any exists, is in the pleadings, and does not reach the merits of the controversy.

Are the defendants liable in the capacity in which they are charged, to answer in damages for the injury which the plaintiff has sustained?

It is conceded, that in the absence of any special restrictions, either by notice or contract, the defendants would have been bound as common carriers, to exercise at least a reasonable degree of care, over the property entrusted to their charge. How far they may be permitted to claim exemption from this obligation in consequence of such restrictions, remains to be determined.

II. As to how far a common carrier may restrict his common law liability by a general notice, the decisions have been somewhat contradictory and conflicting. In this country the current of authority is, that he cannot do so, even when the notice is brought home to the knowledge of the owner. 1 Smith's Lead. Cas. 235, 236. 7 Wels. Hurls. & Gor. 716, *note,* and authorities there cited.

That he may do so by special contract with the party to be affected by it, many approved authorities affirm. But this contract, like all others, must be founded upon a good and sufficient consideration. Such consideration cannot be found in the carriage of the property, for this is a primary obligation that the law imposes upon the carrier; and he cannot make the performance of one part of his duty the means of obtaining exoneration from the rest. 7 Wels. Hurls. & Gor. 716, *note.* *Cole* v. *Goodwin,* 19 Wend. 252. *Atwood* v. *Reliance Trans. Co.,* 9 Watts 87.

III. It is believed that there is no well adjudged case in this country, that has gone to the length of deciding that the carrier can stipulate against the consequences of his own default, or throw a loss occasioned by his own misfeasance or negligence, upon those who have entrusted their property to his care. The courts have held, that if such a stipulation was intended by the parties, it would be contrary to public policy and void. *Camden* v. *Burke,* 13 Wend. 611. *Beckman* v. *Shouse,* 5 Rawle 179. *Alexander* v. *Green,* 7 Hill 533. *Singleton* v. *Hilliard,* 1 Strob. 203. *Swindler* v. *Hilliard,* 2 Rich. 286. 66 E. C. L. 352.

IV. The contract in this case, if of any validity in law, does not *destroy* the defendants' liability. It is a mere *limitation* or *restriction*, and by the express terms of the contract, the defendants were bound " *to use all reasonable care and diligence.*" The court below, therefore, erred in refusing to permit the jury to find whether the injury complained of did not arise from the want of such "reasonable care and diligence" on the part of the defendants.

V. The only consideration for the contract restricting the defendants' liability, that has any apparent validity, is the agreement of defendants to permit the plaintiff to accompany his stock, for the purpose of exercising that care over it which it would otherwise have been their duty to exercise.

Therefore, when defendants, by their own act or neglect, render this consideration absolutely inoperative, and refuse to permit the plaintiff to accompany his stock, that moment they have forfeited the provisions of their contract, and cannot claim any exemption from liability under it; the plaintiff is at liberty at once to repudiate it, and to throw the defendants back upon their original common law liability, as if no restriction in contract had ever existed.

*E. N. Briggs* for defendants.

I. It may be inferred that a Railroad Company doing business is a common carrier of passengers, baggage and freight; but it does not follow that they are common carriers of everything.

It is not true that railroads are common carriers of cattle and horses. But the usage is universally to the contrary.

II. Upon the evidence introduced by the plaintiff, it was not claimed that the defendants were liable as common carriers, but by reason of the separation of the trains, by which plaintiff had not the care and oversight of his cattle.

The court decided that the plaintiff was not entitled to recover for this reason, as that was not what plaintiff claimed in his declaration.

But if the declaration was according to the evidence in the case, the plaintiff is not entitled to recover. The evidence shows that the defendants were not common carriers in this case. The plaintiff hired of the defendants a car to be drawn by the defendants to Cambridge.

A special contract was made, as is shown by the ticket delivered to the plaintiff. Under this contract, defendants were not liable for any loss or damage to plaintiff's cattle. *Chippendale* v. *Lancaster & York Railway Co.*, 11 Amer. Law Journal 397. *Shaw* v. *York & Midland Railway Co.*, 66 Com. Law Rep. 345, notes. *Austin* v. *Manchester Railway Co.*, 70 C. L. Rep. 453.

Common carriers may limit their common law responsibility by special contract. 70 C. L. R. note 474. Story on Bailments 549. *Bingham* v. *Rogers*, 6 Watt & Sergt. 495. Angell on Com. Car. 245, 247, 232. Walford on Railways 308.

The opinion of the court was delivered by

Isham, J. The declaration in this case is in the usual form against common carriers; in which it is averred, that the defendants received of the plaintiff several head of cattle, to be safely conveyed by railway from Brandon, in this state, to Cambridge, in the state of Massachusetts. The question arises, whether upon the facts stated in the exceptions, the declaration is sustained by proof that the cattle were transported by the defendants as common carriers, or whether a special contract was made creating other liabilities, than those upon which the plaintiff has declared.

From the ticket which was delivered to the plaintiff, as well as from the published tariff of freight, which is made part of the case, we perceive that this Railroad Company have adopted two different methods, with different rates of compensation, for the transportation of live stock over this road. In the first place, they have assumed the duties and responsibilities of common carriers; for they distinctly say, that on the payment of 25 per cent advance upon tariff rates, they will safely transport and deliver property of this character at its place of destination, or the station where way-billed. In the next place, if the owner wishes the transportation effected at a less remuneration, they as distinctly state, that on the payment of tariff rates, they will furnish for that purpose, the use of their road, provide suitable cars, and sufficient motive power, so that the stock may be transported at the owner's risk, and on his own responsibility. In short—for a given reward, they proffer to become his carrier; for a less reward, they proffer to furnish the necessary means, that the owner may be his own carrier. Thus in each case, the defendants have graduated their

rate of compensation, to the degree of risk they have assumed; and either mode of transportation, may be adopted at the option of the owner of the stock.

If the owner requests his cattle to be transported by the defendants as common carriers, he has only to pay a reasonable compensation for that purpose, and refuse to enter into any special contract for their carriage on any other terms. In that event, they are responsible for their safe carriage and delivery. It was so held by PARKE, B., in *Carr* v. *The Lancashire Railway Company*, 14 E. Law & Eq. 340. It is immaterial, whether transportation of cattle is regarded as their principal employment, or whether it is incidental and subordinate; the fact that they have undertaken such transportation for hire, and for such persons as choose to employ them, establishes their relation as common carriers, and with it the duties and obligations which grow out of it. These general principles have been frequently applied to railroad corporations in England and this country, and they have clearly the right to exercise that corporate franchise where they have power under their charter to transport both *"persons and property."* Charter Act 1843 § 1. 1 Smith's Lead. Cas. 260, 268. Angell on Car. § 78, 109. Walf. on Railways 309 and note, (g.) *Palmer* v. *Grand Junction R. R. Co.*, 4 M. & W. 749.

We are satisfied that the defendants would be liable as common carriers, and that this case should have been submitted to the jury on this declaration, unless a different relation exists, and different liabilities have been incurred, by some express contract or agreement made between these parties.

The right of these defendants as common carriers to make an express agreement, and thereby change their relation, and subject themselves to different liabilities, is clearly sustained by authorities both English and American. It is unnecessary, to refer to all the cases in England, in which this subject has been considered; it is sufficient to notice the late case of *Carr* v. *The Lancashire Railway Company*, 14 E. Law & Eq. 340, where the various cases are considered, and in which Baron PARKE observed, " That before railways were in use, the articles conveyed were of " a different description from what they are now. Sheep and other " live animals are now carried upon railways. Contracts, there- " fore, are now made with reference to the new state of things,

" and it is very reasonable that carriers should be allowed to make
" agreements for the purpose of protecting themselves against the
" new risks, to which they are in modern times exposed.    The rap-
"id motion and noise of the  engine,  with  various  other matters,
" are apt to alarm them, and cause them to do injuries to them-
" selves.   It is reasonable, therefore, that carriers should protect
" themselves against loss by making special contracts."    The au-
thorities in this country are quite uniform, in adopting the same
view of this subject.    In the case of *New Jersey Steam Naviga-
tion Co.* v. *Merchants' Bank,* 6 Howard 344, the court remarked;
" That a question has been made whether it is competent for the
" carrier to restrict his obligation even by a special agreement;
" but we are unable to perceive any well founded objection to the
" restriction, or any stronger reasons forbidding it, than exist in
" the case of any insurer of goods.   But it by no means follows
" that he can do so by any act of his own.   He has public duties
" to  perform, from  which he should not be permitted to ex-
" onerate himself without the assent of the parties concerned.
" This is not to be implied, or inferred from a general notice to the
" public limiting his obligation."   In the cases of *Hollister* v. *Now-
land,* 19 Wend. 240, *Cole* v. *Goodwin,* ibid 272, and *Gould* v.
*Hill,* 2 Hill 523, it was held in New York that a carrier could
not limit his liability, either by notice, though brought to the
knowledge of the party, nor by a special agreement; and this doc-
trine is also sustained by Messrs. Hare and Wallace in their notes
to the case of *Coggs* v. *Bernard,* 1 Smith's Lead. Cas. 280.   But
since the decision in the 6 Howard R. the courts in that state, in
the cases of *Parsons* v. *Monteith,* 13 Barb. S. C. 358, and *Moore*
v. *Evans,* 14 Barb. 624, have receded from the doctrine of those
former cases, so far as it respects the competency of a carrier to
make a special agreement, and have adopted the views of the U.
S. Supreme Court as expressed in the 6 Howard.   The rule is
regarded, therefore, not only sound in principle, but sustained by
authority, that a common carrier may, by an express contract, or
agreement with the owner, so vary and change his relation, as to
become a private carrier.   In that event his liability in the trans-
portation of that property is measured by the specific provisions
of his contract; but a general notice to the public, limiting his ob-
ligation as such carrier, will afford no evidence of such contract,

either express or implied, though the existence and contents of that notice, are brought home to the actual knowledge of the party. The implication is as strong, that the owner intended to insist upon his rights, and the duties of the carrier, as it is that he assented to their qualification.

Was such an express contract, or agreement, made in this case, in relation to the transportation of these cattle? It is necessary to determine this question, for it is purely one of law. It was so treated by the county court when they ruled, "That if the jury found all the facts to be true which the evidence tended to prove, their verdict should be for the defendants." This question was held to be one of law merely, in the late case in the English courts, of *York, Newcastle* & *Berwick Railway Co.* v. *Crisp*, 23 L. J. 125. Law Register for August 1854. In that case the question arose whether the defendants were common carriers, or whether the cattle were received under a special contract, on the terms contained in a ticket which was delivered to the owner of the cattle. The matter was submitted to the jury. Exceptions being taken, the court of common Bench observed: " That the judge who tried " the case was guilty of a misdirection in leaving it to the jury to " say whether the defendants were common carriers of cattle for " hire, or whether they were received under a special contract; " and that he ought to have told the jury, that there was either a " special contract, or no contract at all." There was no error, therefore, in this case, in the disposition of that question by the court, as a matter of law. We are satisfied also, that the court were correct in ruling that an express contract was made by the parties, for the transportation of these cattle.

Whether the defendants would have been liable as common carriers, if they had refused to transport these cattle except on the terms of an agreement exonerating them from all liability, or restricting their common law responsibility, we are not called upon definitely to decide. It cannot be said in truth, that a voluntary contract was made, where the terms are imposed by one, and the other has no power to repel them. In Noyes' Maxims ch. 43, p. 110, it is said, " That if a carrier refuse to carry unless a promise were made to him, that he shall not be charged with any such misdemeanor, that promise is void ;" and this doctrine is approved of, by Ch. J. Best in *Newborn* v. *Just*, 2 C. & P. 76, and in the notes

of Messrs. Hare and Wallace, 1 Smith's Lead. Cas. 279.   These defendants, however, did not refuse, on the payment of 25 per cent, advance on tariff rates, to receive and transport these cattle as common carriers, and at their risk; and that reward must be considered as reasonable, as no suggestions are made to the contrary.   It is for the benefit and advantage of owners of live stock, that a special agreement may be made, that on the payment of a less sum, they may become their own carriers, and have furnished for them the necessary means for that purpose.

When this plaintiff, therefore, chose not to pay the required compensation to have his cattle transported by the defendants as common carriers, and at their risk, but elected to pay the lower rate, it is reasonable that he should be bound by his own election. In addition to this, the plaintiff states, that he made a contract for the *use of a car*, and was to have the same privileges as others had, *agreeable to the freight tariff.*   For that privilege only did he make application; and for that only did he pay.   It would be unreasonable, therefore, that the plaintiff should now hold the defendants responsible as common carriers, and charge them with a risk and responsibility, which they were not requested to assume, and for which they were never paid.   We think the matter very clear, that a special contract was made, in respect to the transportation of these cattle; under which, the defendants, in the exercise of reasonable care, were to furnish the plaintiff with a suitable car, and other necessary means for transportation; and the plaintiff was to assume the risk, and general responsibility of their transportation.

The remaining question arises, whether, if that special contract has been broken, and damages thereby sustained in the transportation of the cattle, a recovery can be had in this case, under this declaration.   In actions on the case, in form *ex delicto*, where the obligation of the defendant consists in the observance of some *particular duty*, the declaration must state the nature of that duty; and where the duty arises from some particular *relation or character* in which the defendant stands, that relation or character should be stated; and if in either of these particulars, the duty or relation as stated is different from that which is proved, the variance is fatal.   1 Chitty on Plea. 369.   The defendants are charged in the declaration as common carriers, upon whom *the law casts the*

*duty* of safely transporting and delivering the property at its place of destination, unless prevented by the act of God, the public enemies, or the fault of the party complaining. For that reason the liability arising from the relation of common carriers cannot be changed by any act of their own. Under the express contract which is proved in this case, the defendants were not common carriers ; but were *pro hac vice* private carriers merely. Their obligations and duties arose from contract, and therefore may be modified by contract. In the case from the 6 Howard, Justice Nelson observed : "That the owner by entering into a contract " virtually agrees, that in that *particular transaction the carrier is* "*not to be regarded as in the exercise of his public employment ;* but " as a private person, who incurs no responsibility beyond that of " an ordinary bailee for hire, and answerable only for misconduct " or negligence." The same doctrine is sustained in the cases of *Parsons* v. *Monteith,* 13 Barb. 358, *Moore* v. *Evans,* 14 Barb. 524. Angell on carriers § 46, 54, 59. It is quite obvious in this case, that the duties and relation assumed by the defendants under this contract are different, and vary from that with which they are charged in this declaration. The terms of the agreement do not simply affect the damages to be recovered, or create obligations consistent with the relation of common carriers, as was the case of *Clark* v. *Gray,* 6 East. 564, but they extend to the obligation of the contract itself. Their relation is changed from that of common carriers to private carriers; and where such is the effect of their special agreement, they are not liable as common carriers, neither can they be declared against as such. It is possible, that there has been a breach of that express contract, and the plaintiff is, perhaps, entitled to damages for the injuries he has sustained ; but the action should have been brought on that contract, or for a breach of duty arising out of it, and not on the duty and obligation imposed on common carriers. This matter has been directly decided in the cases of *Shaw* v. *York & Midland Railway Co.,* 66 Com. Law 345, and *Austin* v. *The Manchester &c. Railway Co.,* 5 E. Law & Eq. 329. In the last case PATTERSON J. remarked, "that if the declaration is founded upon the liability of the defend- " ants at common law, it is disproved, as the evidence shows they " were liable not as common carriers, but under a special contract," and for that reason he observed, "I am of opinion that there is a

" variance, and that the rule must be discharged." In this opinion, COLERIDGE, WIGHTMAN, and EARLE, Justices, agreed. For the same reason, therefore, we think the judgment of the County Court in this case must be affirmed.