# SUPREME JUDICIAL COURT

### FOR THE

## COUNTY OF HAMPDEN, SEPTEMBER TERM 1863, AT SPRINGFIELD.

PRESENT :

Hon. GEORGE T. BIGELOW, Chief Justice.
Hon. CHARLES A. DEWEY,
Hon. THERON METCALF,
Hon. EBENEZER R. HOAR, } Justices.
Hon. REUBEN A. CHAPMAN,

---

## GEORGE C. JUDSON vs. WESTERN RAILROAD CORPORATION.

A common carrier cannot, by a general notice, exonerate himself entirely from his legal duty and liability for property which is delivered to him for transportation, or fix the amount beyond which he will not be held responsible, in case of injury or loss; although such property is delivered to him by another carrier, to whom the notice has been made known, and who received the same from the owner under an agreement to carry it over his own line, and then, as agent of the consignor, to send it forward by a carrier.

CONTRACT in which the plaintiff seeks to charge the defendants as common carriers, for the loss of a quantity of dressed deer skins, which were in the defendants' freight depot at East Albany on the evening of the 5th of July 1861, when it with all its contents was destroyed by an accidental fire.

At the second trial in the superior court, before *Putnam*, J., after the decision reported in 4 Allen, 520, there was evidence tending to show, and it was found by the jury, that on the afternoon of the 5th of July 1861 two boxes, marked " G. C. Judson, Springfield, Mass., by railroad," were delivered by the New York Central Railroad Company to the defendants at East Albany, for immediate transportation, with the necessary vouchers and expense bills ; and it further appeared that the defendants have for the past ten years issued freight tariffs, which were in force in July 1861, containing among other provisions the following : " No risk assumed beyond $200 on any one package, except by special agreement. All goods and merchandise will be at the risk of the owners while in the corporation's storehouses, and no responsibility will be admitted for any loss or injury except such as may arise by fire from the locomotive engines, or by negligence of the agents of the corporation ; nor for a greater amount than $200 on any one package, except by special agreement." These tariffs were posted in all the freight houses of the corporation, and liberally distributed to the public, and, before the 5th of July 1861, a large number of these freight tariffs were delivered by the defendants to the freight agents of the New York Central Railroad Company at Albany. A notice similar to that contained in the freight tariffs was, and for many years had been, inserted in the printed receipts given for goods delivered at the several stations of the defendants for transportation, but the defendants did not propose to bring these notices home to the plaintiff in any other way than as above stated ; and the plaintiff himself testified that he had never seen them, and was ignorant of their existence.

The New York Central Railroad Company received the boxes from the plaintiff's agent, at Fonda, in the State of New York, and gave for them a shipping receipt which contained the following stipulation, amongst others : " Goods or property consigned to any place off the company's line of road, or to any point or place beyond its termini, will be sent forward with as reasonable dispatch as the general business of the corporation at its warehouse within mentioned will admit, by a carrier or

freight man, when there are such known to the station agent at said warehouse willing to receive the same, unconditionally, for transportation, the company acting, for the purpose of delivery to such carrier or freight man, as the agents of the consignor or consignee, and not as carriers."

The defendants requested the court to instruct the jury that the limitations and conditions contained in their tariff and freight receipts, brought home to the knowledge of the agents of the New York Central Railroad Company as above stated, would exempt them from all liability for the loss of the goods, or in any event would exempt them from liability beyond $200 on each parcel. The judge declined so to rule.

The jury returned a verdict for the plaintiff, with $1020.93 damages, and the case was reported for the consideration of this court.

*J. D. Colt*, for the defendants. 1. There is a marked distinction between the limitations which common carriers have attempted to establish in order to avoid liability for losses which due care and diligence might have avoided, and those by which they seek to escape the extraordinary liabilities imposed on them by law, by which they are made liable as insurers. There is no reason why common carriers should be held to insure against losses which no diligence can avoid. Redfield on Railways, 267, *n.*, 268, 270, 281, and cases cited. 2 Greenl. Ev. § 215. Angell on Carriers, § 245, and cases cited. 1 Parsons on Con. 711, *n.*, and cases cited. Carriers may fix the time when their liability as carriers shall commence; regulate the manner of the delivery of parcels to them; require information as to their contents; refuse to carry such as are not within their line of business; and, under certain circumstances, establish their liability to be that of warehousemen while goods are in their warehouse. The shipper is presumed to know the usage and course of business over the line. Redfield on Railways, 296, *n.* The provisions contained in the tariff and freight receipts exempt the defendants from liability for this loss. 2. In any event, the defendants can only be held liable to the amount of $200 on each package. This regulation promotes fair dealing on the part of the consignor.

Carriers are not obliged to take packages of uncommon value. They may lawfully confine themselves to articles under a given value, and publish to the world that they will not take articles above that value, as common carriers, except upon a special undertaking. Freight tariffs are arranged with reference to average values. Redfield on Railways, 266, *n.*, and cases cited. 1 Parsons on Con. 711, *n.*, and cases cited. 3. In law, as well as by the terms of the shipping receipt, the New York Central Railroad Company were agents of the plaintiff to forward these boxes, and notice to that company of the defendants' regulations was notice to the plaintiff. It was the only way in which it was possible to give notice. *Nutting* v. *Connecticut River Railroad*, 1 Gray, 502. *Garside* v. *Trent & Mersey Navigation Co.* 4 T. R. 581. *Mayhew* v. *Eames*, 1 C. & P. 550. Story on Bailm. §§ 538, 546, 558.

*H. Morris*, for the plaintiff.

BIGELOW, C. J. It would not be profitable to enter upon a citation and discussion of the numerous and conflicting cases bearing on the question of the rights of a common carrier, by a general notice, to absolve himself entirely from his common law liability for property intrusted to his care, or to modify and limit his responsibility by a mere constructive notice to those who may have occasion to place goods, wares and merchandise in his keeping for the purpose of transportation. A careful examination of the authorities would not lead to any very satisfactory result, or throw much light on the real principles on which the respective rights and duties of carriers and the public mainly depend. A very full and clear statement of the results arrived at in the leading cases on the subject can be found in the elementary writers, especially in Redfield on Railways, 264; Angell on Carriers, §§ 232–245; 1 Parsons on Con. 707.

There is, however, one conclusion which is fully supported by the weight of authority in the American courts, concerning which no serious doubt can be entertained; that is, that a public carrier may enter into a special contract with his employer by which he may stipulate for a partial or entire exoneration from his liability at common law as an insurer of property committed to his

custody, and that such contract is not contrary to public policy, or invalid as transcending the just limits of the right of parties to regulate their dealings by special stipulations. As a necessary corollary of this conclusion, it is also held in the best considered cases and by the most approved text writers, that a notice by a carrier that he will not assume the ordinary responsibility imposed on him by law, if brought home to the owner of goods delivered for transportation, and assented to clearly and unequivocally by him, will be binding and obligatory upon him, because it is tantamount to an express contract that the goods shall be carried on the terms specified in such notice. To this extent, the doctrine that a carrier may limit or modify his liability seems to be most just and reasonable. Inasmuch as the rule of law which holds a carrier to the responsibility of an insurer, except in certain special cases, is founded in a policy which is designed solely for the security and benefit of the owner of goods, there can be no sufficient reason for regarding the rule as absolutely inflexible or irrepealable, when the party, in whose favor it will operate, directly or by necessary implication consents to waive it, or agrees to an essential modification of his own rights under it.

But it is a very different proposition to assert that a common carrier may escape his legal liability or materially change it by a general notice to all persons that he will not be responsible for the loss or injury of property intrusted to his custody, or only liable therefor under such conditions and limitations as he may think proper to impose. A common carrier is in a certain sense a public servant, exercising an employment not merely for his own emolument and advantage, but for the convenience and accommodation of the community in which he pursues his calling. The law imposes on him certain duties and responsibilities different from and greater than those which attach to an occupation of a purely private nature, in regard to the conduct of which the public have no interest, and which can be carried on at the option or according to the pleasure of the person who is engaged in it. A common carrier cannot legally refuse to transport property of a kind which

comes within the class which he usually carries in the course of his employment, if it is tendered to him at a suitable time and place, with an offer of a reasonable compensation. Like an inn keeper, he is obliged to exercise his calling upon due request under proper circumstances, and is liable to an action for damages if he wrongfully refuses to do so. A legal obligation rests upon him to assume the duty which he holds himself out as ready to perform, and a correlative right belongs to the owner of goods to ask for and require their reception and transportation upon the terms of liability fixed and defined by the established rules of law. The carrier has not the option to accept or refuse the carriage of the goods at his pleasure; but the person seeking to have them transported can choose whether they shall be carried without any restriction of the carrier's duty as prescribed by law, or whether he will waive a portion of his rights, and consent to a modification of the legal liability which attaches to the carrier Such being the legal relation which subsists between a common carrier and his employer, it certainly would be inconsistent with it to hold that a carrier, by a mere notice brought home to the owner of goods intrusted to his care that he did not intend to assume all the liabilities of his calling, could escape or materially change the responsibility which the law annexes to the contract of the parties. It would in effect put it in the power of the carrier to abrogate the rules of law by which the exercise of his employment is regulated and governed. Certainly such a notice, even if shown to have been within the knowledge of the owner of goods, would, in the absence of evidence of his direct assent to its terms, afford no sufficient ground for the inference that he had voluntarily agreed without any consideration to relinquish and give up the valuable right of having his goods carried at the risk of the carrier. On the contrary, it would be quite as reasonable to infer under such circumstances that the carrier did not intend to rely upon a notice upon which he could not legally insist, as that the owner of goods meant to surrender a right to which he was entitled by law. In such case, mere silence cannot be said to amount to acquiescence. The leading cases in the American courts in which these

doctrines have been recognized and established are *New Jersey Steam Navigation Co.* v. *Merchants' Bank,* 6 How. (U. S.) 344 *Farmers' & Mechanics' Bank* v. *Champlain Transportation Co.* 23 Verm. 186, 205 ; *Kimball* v. *Rutland & Burlington Railroad,* 26 Verm. 247 ; *Moses* v. *Boston & Maine Railroad,* 4 Fost. (N. H.) 71. See also the recent English case of *Garton* v. *Bristol & Exeter Railway,* 1 Best & Smith, 112, 161.

The application of these principles to the present case is decisive against the right of the defendants to insist on the instructions for which they asked at the trial. It is not contended that the plaintiff had any actual knowledge of the notice issued by the defendants, containing a limitation of their common law liability as carriers. If he had any knowledge at all, it was at most only constructive, through the New York Central Railroad Company, who received the goods for transmission over their own road, to be delivered to the defendants to be forwarded over a portion of their route. There is no fact in the case from which any assent by the plaintiff to the terms of the notice can be inferred. One portion of the notice on which the defendants rely goes to the extent of repudiating all liability for the loss or injury of goods delivered to the defendants and in process of transportation, except such as might be caused by fire from the locomotive engines or by the negligence of the agents of the corporation. This certainly was not binding on the plaintiff. Equally invalid was that portion of the notice which announced that the defendants would not be liable for a greater amount than two hundred dollars on any one package, except by special agreement. This was equivalent to a notice that they would not be liable for a greater amount than two hundred dollars on a single package, unless they chose to assume a further liability. It was optional with them, under this notice, whether they would make any such agreement or not. If they refused or omitted to do so, the owner of goods had no power to compel them to enter into any agreement. Nor, if the notice of itself is binding on him, had he any means of obtaining the safe transportation of his goods by the defendants above the value of two hundred dollars, under the liabilities imposed by law upon common carriers.

Judson *v.* Western Railroad Corporation.

We do not mean to say that a general notice brought home to an owner of goods may not be available to qualify and limit the responsibility of common carriers to a certain extent and within certain limits. Doubtless they may by such a notice require that information shall be given to them of the nature and value of property which they are required to carry, in order that they may exercise a needful degree of care in its transportation, and may ascertain and demand a reasonable sum for its carriage. So they may give notice that property above a certain amount in value will not be transported for ordinary rates of freight, but that the price for its carriage will be regulated by the nature of the articles and the aggregate value of each package. In like manner they may by a general notice protect themselves against liability for loss or injury of merchandise, unless it is properly packed or arranged for transportation, so that it may with reasonable diligence and care be safely and securely carried. These and other similar notices would be reasonable and perfectly consistent with the nature of the employment of a common carrier, and the rules of law by which it is regulated, and they would be valid and binding on all to whom they were brought home, without any express assent. All that we mean to decide is, that a common carrier cannot by a general notice exonerate himself entirely from his legal liability, nor limit it absolutely to a certain amount beyond which he will not be held responsible in case of injury or loss. This was the legal effect of the notice on which the defendants rely in the present case, as is admitted by their counsel, who puts his defence to this action on the ground that they are not liable at all, or only for the sum of two hundred dollars on each package. Such a notice, being invalid, was not binding on the plaintiff, and he is therefore entitled to *Judgment on the verdict*