STATE ex rel. BOARD OF RAILROAD COMMISSIONERS, Appellants, v. BLECHA & OWEN TRANSFER et al., Appellees.

No. 40913.

NOVEMBER 17, 1931.

REHEARING DENIED FEBRUARY 17, 1932.

J. H. Henderson, Commerce Counsel, and Stephen Robinson, Assistant Commerce Counsel, for appellant.

A. E. Maine and Will J. Hayek, for appellees.

WAGNER, J.—The defendants reside in Iowa City and are truck operators, holding a permit as such issued by the Board of Railroad Commissioners on April 11, 1930, under the provisions of Chapter 129, Laws 43 G. A. (now Chapter 252-C1, Code, 1931).

The plaintiff, in its petition, alleges, in substance, that the defendants, since April 15, 1930, have been operating a motor vehicle, or vehicles, for the public transportation of freight for compensation over a regular route or between fixed termini, without procuring a certificate of convenience and necessity from the Board of Railroad Commissioners of the State of Iowa, as provided by Chapter 252-A1, Code, 1927, and without complying with the various provisions of said chapter, and without paying the motor carrier tax, as provided by Chapter 252-A2, Code, 1927, and that the operations of defendants between Iowa City and Cedar Rapids result in an unlawful and unauthorized use by them of the public highways. It prays that the defendants be enjoined from operating over the highways of the state as motor carriers between Iowa City and Cedar Rapids.

The defendants answered by a general denial, and aver, in substance, that since April 11, 1930, they have held a permit issued by the Railroad Commissioners as truck operators, and that the transportation conducted by them consists of the doing of a general trucking business under said permit.

Hence, the issue for determination is: Have the operations by the defendants been violative of the provisions of Chapters 252-A1 and 252-A2, Code, 1927, or have they been such as they are authorized to do under their permit issued under Chapter 129, Laws 43 G. A. (Now Chapter 252-C1, Code, 1931)? Under Chapter 252-A1, Code, 1927, before a motor carrier can lawfully operate within the purview of said chapter, he must obtain a certificate showing that the service proposed to be rendered will promote the public convenience and necessity. See Section 5105-a7, Code, 1927. Under Chapter 129, Laws 43 G. A. (Now Chapter 252-C1, Code, 1931), before a truck operator can lawfully operate within the purview of said chapter, he must obtain a permit. See Section 5105-c6, Code, 1931. The definitions of the terms "motor vehicle" in Chapters 252-A1 and 252-A2, Code, 1927, and "motor truck" in Chapter 252-C1, Code, 1931, are identical. Likewise, the definitions of the terms "highway" and "commission" as used in the three chapters are identical. In Chapters 252-A1 and 252-A2, Code, 1927, the term "motor carrier" is defined as "any person operating any motor vehicle upon any highway in this state." In Chapter 252-C1, Code, 1931, the term "truck operator" is defined as "any person operating any motor truck or motor trucks upon any highway in this state." A motor truck is necessarily a motor vehicle. In Chapter 252-C1, Code, 1931, the term "motor truck" is defined as "any automobile, automobile truck, or other self-propelled vehicle, including any trailer, semi-trailer or other device used in connection therewith, not operated upon fixed rails or track, used for the public transportation of freight for compensation, *not operating between fixed termini, nor over a regular route.*" (Writer's italics). See Section 5105-c1, Code, 1931. In Chapter 252-A1, Code, 1927, the term "motor vehicle" is defined as "any automobile, automobile truck, motor bus, or other self-propelled vehicle, not operated upon fixed rails or track, used for the public transportation of freight or passengers for compensation *between fixed termini, or over a regular*

*route,* even though there may be occasional, periodic or irregular departures from such termini or route." See Section 5105-a1, Code, 1927. (Writer's italics). In Chapter 252-A2, Code, 1927, the term "motor vehicle" is defined as "any automobile, automobile truck, motor bus, or other self-propelled vehicle, not operated upon fixed rails or track, used for the public transportation of freight or passengers for compensation *between fixed termini, or over a regular route,* even though there may be occasional, periodic or irregular departures from such termini or route." (Writer's italics). See Section 5105-a40, Code, 1927.

It will be noted from the foregoing provisions of the statutory law that the definition of "motor carrier" as used in Chapters 252-A1 and 252-A2, Code, 1927, is identical with the definition of "truck operator" as used in Chapter 252-C1, Code, 1931. It is also apparent that a "motor truck" must also be a "motor vehicle." It will also be observed that the language, "used for the public transportation of freight for compensation," appears in both Chapter 252-A1, Code, 1927, and Chapter 252-C1, Code, 1931. The only difference in the language of the various chapters is in the words "not operating between fixed termini, nor over a regular route" as used in Chapter 252-C1, Code, 1931, and the words "used * * * between fixed termini, or over a regular route, even though there may be occasional, periodic or irregular departures from such termini or route," as used in Chapters 252-A1 and 252-A2, Code, 1927. Therefore, the decisive question must be: Did the defendants, as truck operators, operate or use their motor trucks *between fixed termini or over a regular route* within the meaning of Chapters 252-A1 and 252-A2, Code, 1927? If so, the judgment of the trial court is erroneous, and if not, it is correct.

It becomes necessary at this point to refer to the testimony in the case. There are various ways for the transportation of freight between Cedar Rapids and Iowa City, to wit, the Chicago, Rock Island & Pacific Railroad, an interurban railway and the Crandic Stages, which latter company, as we understand the record, has a certificate of convenience and necessity under Chapter 252-A1, Code, 1927. The Cedar Rapids Commission Company, the Nash-Floden Company, and Western Grocery Company, wholesale houses, are located in the city of Cedar

Rapids. There is also a wholesale house, the Iowa City Fruit Company, located in Iowa City. The defendants conducted a truck hauling business at Iowa City, hauling freight which came to the Rock Island depot and also to the interurban depot, for the Iowa City merchants. Upon call, they made trips for hauling purposes between Iowa City and various other cities, some of which were: Davenport, Muscatine, Washington, Marengo, South Amana and Cedar Rapids. They hauled freight from various farms to the Iowa City Fruit Company. They hauled freight from the places of business of the three Cedar Rapids wholesale houses to the merchants in Iowa City, and also freight to and from the Iowa City Fruit Company. They did not advertise for nor solicit any business at Cedar Rapids, and only went upon call, usually by telephone, but sometimes in person by the salesman. They made no regular trips between Cedar Rapids and Iowa City, had no schedule of service, and the trips were made upon call from early morning until late in the night. The record shows that their trips between Cedar Rapids and Iowa City ranged from one to three, four or five trips per week. There were times when, for good reasons, the condition of the roads or weather, or when otherwise busily engaged, they refused to make trips to Cedar Rapids upon call. The wholesale houses in Cedar Rapids sold their goods to the Iowa City merchants, which were shipped over the Interurban Railway or transported by the defendants, freight and delivery charges prepaid. For goods hauled from Cedar Rapids to Iowa City, defendants made a charge of from 20c to 25c per hundred, depending upon whether the goods were delivered on the first floor of the merchants' place of business or in the basement. This price was based upon the time consumed and the difficulty encountered in making the delivery. For the goods carried for the Iowa City Fruit Company, the company paid the charge made by the defendants for freight carried by them from the Fruit Company to other places, or from other places to the Fruit Company. They had no standing contracts with either the aforesaid wholesale houses in Cedar Rapids or the one in Iowa City, and made the hauls only when called.

We deem the foregoing a sufficient statement of facts upon which to draw our final conclusion. We find nothing in the record which indicates any conduct on the part of the defend-

ants indicative of a purpose or subterfuge to evade any provision of the law. The appellant argues that the defendants are common carriers. As hereinbefore stated, the statutory definition of "motor carrier" and "truck operator" in the controlling statutes is identical. But this is not decisive of the question. The decisive question is: Were the defendants operating or using their motor trucks between "fixed termini or over a regular route" within the meaning of Chapters 252-A1 and 252-A2, Code, 1927? The appellant argues that a motor carrier may operate between fixed termini and not have a freight station or depot. This is not questioned by the appellees. The appellant's contention in this respect is apparently correct. See Chelan Transfer Co. v. Foote, (Wash.) 228 Pac. 297, where it is held that a terminus of a route of one operating a motor vehicle under the required certificate of public convenience is not so circumscribed that the holder of the certificate may not collect or distribute the freight at the residences of his patrons or their places of business, or at other serviceable points. But this does not solve the problem.

The application for a certificate of convenience and necessity must show "a complete description of the route over which the applicant proposes to operate," and also, and more significant, it must show "schedule setting forth in detail the service which the applicant proposes to furnish." See Section 5105-a12, Code, 1927. This indicates a fixity of route and regularity as to travel thereon. True, there may be "occasional, periodic or irregular departures from such termini or route." In other words, the party, or parties, having a certificate of convenience and necessity may, for good reasons, make immaterial variations from the route. But because one may have a certificate of convenience and necessity for the operation of motor vehicles this does not signify that others may not legitimately use the highways—the same route and between the same termini.

It will be observed from the foregoing testimony that the defendants had no predetermined plan relative to trips made to and from Cedar Rapids. If there is no call, no trip is made; if a call is made, the highway extending between them and the place of the call determines the route, and also the termini thereof. In other words, one terminus is where they are, and the other where they must go in obedience to the call. As to

the defendants, there is nothing regular, predetermined or fixed about their routes or the termini thereof. Their route one day may be between Iowa City and Davenport, or any other town or city, and between Iowa City and Cedar Rapids the next, or some subsequent date, or vice versa, or between Iowa City and Davenport or any other town or city in the forenoon and between Iowa City and Cedar Rapids in the afternoon, or vice versa. The termini of their hauls are no more fixed than their routes are regular. It seems quite clear to us that the defendants are not operating their trucks between fixed termini or over a regular route.

This is a case of first impression in this state, but the decisive question has been passed upon by the Supreme Court of Minnesota in State v. Boyd Trans. & St. Co. (Minn.), 209 N. W. 872. The court in passing upon the question said:

"Even if it (the defendant) is a common carrier, defendant is not subject to the act, unless it is transporting goods 'between fixed termini or over a regular route.' The quoted phrase is declared by subdivision (g) of section 2 to 'mean the termini or route between or over which any auto transportation company usually or ordinarily operates any motor vehicle, even though there may be departures from said termini or route.' We take the statute to mean that, in order to come within its purview, a business must be confined, through custom or predetermined plan, to a selected route or routes traveled habitually if not at stated intervals. There is nothing of that kind in this case—nothing regular or predetermined about either routes or termini. Recurring but constantly varying occasion and no pre-existing plan or custom determines the route of each haul, and it may not be followed again for months, and in some cases not at all. If travel has no regular route, how can it have 'fixed termini' except as any single journey must have termini? In our opinion the one, in the present sense, implies the other. It is a case where the disjunctive 'or' of the statute is not of controlling significance. The termini of defendant's hauls are no more fixed than its routes are regular. They are no more fixed or regular than are those of the ordinary drayman. They are as much subject to the caprice of occasion, and so cannot be either 'fixed' or regular. 'Fixed' as a modifier of 'termini'

denotes predetermination, establishment, and a degree of constancy and invariability, which excludes subservience ·alone to mere occasion. Webster's New International Dictionary; 3 Words and Phrases First Series, p. 2830. In its complete subjugation to the requirements of recurring occasion is found a complete differentiation of defendant's hauling from that of the ordinary railroad. The latter's routes and termini are, by predetermination, made both regular and fixed. The routes are fixed by the line itself and the termini confined to its established stations. The statute furnishes much internal evidence in support of our interpretation. The statutory definition is self-qualified by its reference to possible 'departures from said termini or route.' *That implies a fixing of both route and termini by some sort of predetermination.* (Writer's italics.) Otherwise there could be nothing fixed or regular from which to make departures. The time schedules contemplated by the act have the same implication. It is still more apparent from the provision of section 4, authorizing departures by any carrier subject to the law 'from the route over which it is authorized to operate.' The determination of 'public convenience and necessity' by the commission, which is prerequisite to any carrier's operating under the law, seems to refer to the convenience and necessity of operation over ascertained and designated highways. The petition for the certificate of convenience and necessity must show 'the public highway or highways over which, and the fixed termini between which, or the route or routes over which, it intends to operate'; also and more significant, the 'proposed time schedule.' *The definition itself, as well as its context, shows an intent to exclude rather than include such a general transfer business as that of defendant which hauls as occasion requires, and not over routes or between termini made regular or fixed by predetermining plan or custom.''* (Writer's italics.)

It will be noted that the statutes of Minnesota are analogous to the statutes contained in Chapters 252-A1 and 252-A2, Code, 1927. The reasoning of the pronouncement of that court is conclusive on the decisive question involved in the instant case.

It is quite clear from the record that the defendants have

not, within the meaning of the statute, operated their motor trucks between fixed termini or over a regular route. Therefore, the judgment of the trial court is correct, and the same is hereby affirmed.—Affirmed.

FAVILLE, C. J., and STEVENS, DE GRAFF, and ALBERT, JJ., concur.