192 U.S. 440 (1904)
NORTHERN PACIFIC RAILWAY COMPANY
v.
ADAMS.
No. 143.
Supreme Court of United States.
Argued January 25, 26, 1904.
Decided February 23, 1904.
CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.
*442 Mr. Charles W. Bunn for petitioner.
Mr. Reese H. Voorhees, with whom Mr. C.S. Voorhees was on the brief, for defendants in error.
*448 MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.
As the negligence of the company, found by the jury to have *449 caused the death, as well as the resulting death took place in Idaho, the plaintiffs' right of action rests on the statute of that State. What is the scope and meaning of that statute? The Circuit Court charged the jury:
"You are not to consider what was the duty of this carrier toward Mr. Adams who was killed, but the duty which the defendant owed to these plaintiffs; and the duty which they have the right to exact from the defendant in this case is the same duty which the defendant company owed to the public in general."
In other words, although it should appear that the company in no respect failed in its duty to the deceased, it could yet be held responsible to the widow and son for the damages they suffered by reason of the death. But this is a misconception. Their right of action arises only when his death is caused by "the wrongful act or neglect." If there be no omission of duty to the decedent, his heirs have no claim. Suppose an individual is wantonly assailed and in order to protect his own life is obliged to kill the assailant, may the heirs of the decedent have that act of taking life, rightful as against the decedent, adjudged wrongful as against them, and recover damages from one who did only that which his duty to himself and family required him to do? The statute does not provide that when one's life is taken by another the heirs of the former may recover damages, but only when it is wrongfully taken, that is, when it is taken in violation of the rights of the decedent, wrongful as against him. "Neglect" stands in the same category with "wrongful act." It implies some omission of duty. The trial court in this case charged the jury:
"Negligence to create a liability on the part of parties in fault must be a failure to observe the degree of care and prudence that is demanded in the discharge of the duty which the person charged with the negligence owed under the peculiar circumstances of the case to the injured party."
As stated in Pollock on Torts, p. 355, quoting from Baron *450 Alderson in Blyth v. Birmingham Waterworks Company, 11 Ex. 784; 25 L.J. Ex. 213:
"`Negligence is the omission to do something which a reasonable man, guided upon those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do,' provided, of course, that the party whose conduct is in question is already in a situation that brings him under the duty of taking care."
The two terms, therefore, wrongful act and neglect, imply alike the omission of some duty, and that duty must, as stated, be a duty owing to the decedent. It cannot be that, if the death was caused by a rightful act, or an unintentional act with no omission of duty owing to the decedent, it can be considered wrongful or negligent at the suit of the heirs of the decedent. They claim under him, and they can recover only in case he could have recovered damages had he not been killed, but only injured. The company is not under two different measures of obligation  one to the passenger and another to his heirs. If it discharges its full obligation to the passenger, his heirs have no right to compel it to pay damages.
Did the company omit any duty which it owed to the decedent? He was riding on a pass which provided that the company should "not be liable, under any circumstances, whether of negligence of agents of otherwise, for any injury to the person." He was a free passenger, paying nothing for the privilege given him of riding in the coaches of the defendant. He entered those coaches as a licensee, upon conditions which he, with full knowledge, accepted. He was not a passenger for hire, such as was held to be the condition of the parties recovering in Railroad Company v. Lockwood, 17 Wall. 357, and Railway Company v. Stevens, 95 U.S. 655. In the first of these cases Mr. Justice Bradley, who delivered the opinion of the court, closed an elaborate discussion of the questions with these words:
"We purposely abstain from expressing any opinion as to *451 what would have been the result of our judgment had we considered the plaintiff a free passenger instead of a passenger for hire."
The question then is distinctly presented whether a railroad company is liable in damages to a person injured, through the negligence of its employes, who at the time is riding on a pass given as a gratuity, and upon the condition known to and accepted by him that it shall not be responsible for such injuries. It will be perceived that the question excludes injuries resulting from wilful or wanton acts, but applies only to cases of ordinary negligence. The facts of this case certainly do not call for any broader inquiry than this. The specific matters of negligence charged are the placing a non-vestibuled car in a vestibuled train, and the high rate of speed at which the train passed around the curve at the place of injury. But non-vestibuled cars are in constant use all over the country  were the only cars in use up to a few years ago  and further, the deceased, having passed over the open platform, knew exactly its condition. As the court charged the jury, "Mr. Adams must be presumed to have known that it was not vestibuled and to have acted with perfect knowledge of the fact." The rate of speed was no greater than is common on other trains everywhere in the land, and the train was, in fact, run safely on this occasion. We shall assume, however, but without deciding, that the jury were warranted, considering the absence of the vestibuled platform and the high rate of speed in coming around the curve, in finding the company guilty of negligence; but clearly it was not acting either wilfully or wantonly in running its trains at this not uncommon rate of speed, and all that can at most be said is that there was ordinary negligence. Is the company responsible for injuries resulting from ordinary negligence to an individual whom it permits to ride without charge on condition that he take all the risks of such negligence?
This question has received the consideration of many courts and been answered in different and opposing ways. We shall *452 not attempt to review the cases in state courts. Among those which hold that the company is not responsible may be mentioned Rogers v. Kennebec &c. Company, 86 Maine, 261; Quimby v. Boston &c. Railroad Company, 150 Massachusetts, 365; Griswold v. New York &c. Railroad Company, 53 Connecticut, 371; Kinney v. Central Railroad Company, 34 N.J. Law, 513; Payne v. Terre Haute &c. Railway Company, 157 Indiana, 616; Muldoon v. Seattle City Railway Company, 7 Washington, 528; S.C., 10 Washington, 311. This last case was decided by the Supreme Court of the State, in which the Federal court rendering the judgment in controversy was held. The English decisions are to the same effect. McCawley v. Furness Railway Company, L.R. 8 Q.B. 57; Hall v. Northeastern Railway Company, L.R. 10 Q.B. 437; Duff v. Great Northern Railroad Company, Ir. L.R. 4 Com. Law, 178; Alexander v. Toronto &c. Railway Company, 33 Up. Can. Q.B. 474. Among those holding that the company is responsible are: Rose v. Des Moines Valley Railroad Company, 39 Iowa, 246, though that case is rested partially on a state statute; Pennsylvania Railroad Company v. Butler, 57 Pa. St. 335; Mobile & Ohio Railroad Company v. Hopkins, 41 Alabama, 486; Gulf, Colorado &c. Railway Company v. McGowan, 65 Texas, 640.
Turning to the decisions of this court, in Philadelphia & Reading Railroad Company v. Derby, 14 How. 468, and Steamboat New World v. King, 16 How. 469, the parties injured were free passengers, but it does not appear that there were any stipulations concerning the risk of negligence, and the companies were held guilty of gross negligence. In Baltimore & Ohio &c. Railway v. Voigt, 176 U.S. 498, Voigt, an express messenger riding in a car set apart for the use of an express company, was injured by the negligence of the railway company. There was an agreement between the two companies that the former would hold the railway company free from all liability for negligence, whether caused by the negligence of the railway company or its employes. Voigt entering into the employ of the express company, signed a contract in writing, *453 whereby he agreed to assume all the risk of accident or injury in the course of his employment, whether occasioned by negligence or otherwise, and expressly ratified the agreement between the express company and the railway company. It was held that he could not maintain an action against the railway company for injuries resulting from the negligence of its employes. Mr. Justice Shiras, who delivered the opinion of the court, reviewed many state decisions, and concluded with these words (p. 520):
"Without enumerating and appraising all the cases respectively cited, our conclusion is that Voigt, occupying an express car as a messenger in charge of express matter, in pursuance of the contract between the companies, was not a passenger within the meaning of the case of Railroad Company v. Lockwood; that he was not constrained to enter into the contract whereby the railroad company was exonerated from liability to him, but entered into the same freely and voluntarily, and obtained the benefit of it by securing his appointment as such messenger, and that such a contract did not contravene public policy."
In the light of this decision but one answer can be made to the question. The railway company was not as to Adams a carrier for hire. It waived its right as a common carrier to exact compensation. It offered him the privilege of riding in its coaches without charge if he would assume the risks of negligence. He was not in the power of the company and obliged to accept its terms. They stood on an equal footing. If he had desired to hold it to its common law obligations to him as a passenger, he could have paid his fare and compelled the company to receive and carry him. He freely and voluntarily chose to accept the privilege offered, and having accepted that privilege cannot repudiate the conditions. It was not a benevolent association, but doing a railroad business for profit; and free passengers are not so many as to induce negligence on its part. So far as the element of contract controls, it was a contract which neither party was bound to enter into, *454 and yet one which each was at liberty to make, and no public policy was violated thereby.
It follows from these considerations that there was error in the proceedings of the Circuit Court and Court of Appeals. The judgments of those courts will be reversed and the case remanded to the Circuit Court with instructions to set aside the verdict and grant a new trial.
MR. JUSTICE HARLAN and MR. JUSTICE McKENNA dissent.