### STATE v. BOYD TRANSFER & STORAGE COMPANY.[1]

July 9, 1926.

No. 25,348.

**Common carrier of freight by motor truck.**

1. The nature of defendant's business stated and it is assumed but not decided to be a common carrier of freight by motor truck.

**Transfer company hauling household goods as ordered not subject to motor transportation statute.**

2. Defendant hauls household goods from Minneapolis to other points within a radius of 600 miles. It does not operate according to schedule. The routes and termini of its hauls are not predetermined by plan or custom. They are wholly subservient to occasion and its constantly varying requirements. *Held* that defendant is not operating "between fixed termini or over a regular route" so as to be subject to chap. 185, L. 1925.

Carriers, 10 C. J. p. 54 n. 7 New; p. 59 n. 72 New.

***

See notes in 18 A. L. R. 1316.

The defendant appealed to the district court for Hennepin county from an order of the Railroad and Warehouse Commission directing appellant to cease and desist from operating as an automobile transportation company for the transfer of household goods in certain localities. There was judgment, Nye, J., affirming the decision of

[1] Reported in 209 N. W. 872.

the commission. Defendant appealed from the decision. Reversed.

*Kingman, Cross, Morley & Cant,* for appellant.

*Jamison, Stinchfield & Mackall* and *Perry R. Moore,* filed a brief as amici curiae.

*Clifford L. Hilton,* Attorney General, and *Ernest C. Carman,* Assistant Attorney General, for respondent.

STONE, J.

Appeal from a judgment affirming an order of the Railroad and Warehouse Commission directing appellant, Boyd Transfer & Storage Company (which has declined to comply with the statute about to be considered), to "cease and desist from operating as an auto transportation company engaged in the transportation of household goods * * * over the public highways between different localities or communities within the state of Minnesota not being contiguous villages or cities."

The ultimate question is whether appellant, in that portion of its motor transport business hereinafter considered, is subject to chap. 185, p. 178, L. 1925. That statute is entitled in part as follows:

"An act providing for supervision and regulation of transportation of persons and property for hire as common carriers on any public highway in this state, by motor vehicles."

The administration and enforcement of the law are confided to the Railroad and Warehouse Commission and sec. 5 provides that:

"No auto transportation company shall hereafter operate for the transportation of persons or property for hire as a common carrier on any public highway without first having obtained from the Commission * * * a certificate declaring that public convenience and necessity require such operation."

The scope of the phrase "auto transportation company" is limited by subd. (h) of sec. 2 to those operating "for compensation as common carriers over any public highway in this state between fixed termini or over a regular route." So if defendant is not a common

carrier or, being one, does not operate on the public highways "between fixed termini or over a regular route," it is not subject to the statute.

There is no attempt to convert any private carrier into a common carrier, nor to impose the duties and liabilities of the latter on any one not already self-subjected thereto. The restriction to common carriers seems unnecessary for it has never been doubted that, with respect to the use of public highways for their own business, private as well as common carriers are subject to government regulation. Michigan P. U. Comm. v. Duke, 266 U. S. 570, 45 Sup. Ct. 191, 69 L. ed. 445, 36 A. L. R. 1105; Frost & Frost T. Co. v. R. R. Comm. of Cal. 271 U. S. 583, 46 Sup. Ct. 605, 70 L. ed. 682.

1. The first question presented is whether the Boyd company, in that portion of its business now under consideration, is a common carrier. It is primarily a Minneapolis warehouseman. Out of that business has grown a large city and intercity transfer business. It hauls much merchandise for regular customers under special and continuing contracts. In addition to that and other kinds of business not here important, it transports by motor truck large quantities of household goods between the Twin Cities, particularly Minneapolis and outlying points within a radius of 600 miles. All of that work is done at uniform mileage rates, with additional fixed charges for loading and unloading. There is no discrimination between customers—all are given equal treatment with the same facilities at equal rates. None of the trucks make regular trips. There are no time schedules between any two or more termini. The business is specially and generally advertised by defendant. It offers to serve all who come, in the manner indicated. Asserting that it has never expressly held itself out as a common carrier, it claims to have reserved the right to refuse the business of anyone who for any reason might be objectionable to it. It declines to send out its trucks when, because of road or weather conditions, the business would be unprofitable. Moreover when its local transfer business and the needs of its regular customers temporarily require the use of all its trucks it declines to do anything else with them.

For example, during the peak seasons of local household moving in the spring and autumn, its trucks may all be required for that business. At such seasons it may and has declined to haul household goods to outlying points. The local and Twin City traffic seems the more profitable and is given preference over the outside interstate and intrastate hauling. As already stated, it makes no regular trips but when it does haul to outlying points, it is done "over the most direct routes upon the public highways between such villages and cities." Defendant's practice is to have its chauffeurs collect its charges before unloading and there is no suggestion that, unless all its equipment were otherwise engaged or road or weather conditions prevented, it would refuse the business of any one ready and able to pay in advance or before unloading.

On that showing, we assume without deciding that, as to its trucking of household goods from Minneapolis to other points, defendant is a common carrier. We have stated the facts fully simply as an introduction to the one question, the decision of which is necessary.

2. Even if it is a common carrier, defendant is not subject to the act unless it is transporting goods "between fixed termini or over a regular route." The quoted phrase is declared by subd. (g) of sec. 2 to "mean the termini or route between or over which any auto transportation company usually or ordinarily operates any motor vehicle, even though there may be departures from said termini or route."

We take the statute to mean that in order to come within its purview a business must be confined, through custom or predetermined plan, to a selected route or routes traveled habitually if not at stated intervals. There is nothing of that kind in this case— nothing regular or predetermined about either routes or termini. Recurring but constantly varying occasion and no pre-existing plan or custom determines the route of each haul and it may not be followed again for months and in some cases not at all.

If travel has no regular route, how can it have "fixed termini" except as any single journey must have termini? In our opinion

the one, in the present sense, implies the other. It is a case where the disjunctive "or" of the statute is not of controlling significance. The termini of defendant's hauls are no more fixed than its routes are regular. They are no more fixed or regular than are those of the ordinary drayman. They are as much subject to the caprice of occasion and so cannot be either "fixed" or regular. "Fixed" as a modifier of "termini" denotes predetermination, establishment and a degree of constancy and invariability which excludes subservience alone to mere occasion. Webster, New International Dictionary; 3 Words and Phrases, 2830.

In its complete subjugation to the requirements of recurring occasion, is found a complete differentiation of defendant's hauling from that of the ordinary railroad. The latter's routes and termini are by predetermination made both regular and fixed. The routes are fixed by the line itself and the termini confined to its established stations.

The statute furnishes much internal evidence in support of our interpretation. The statutory definition is self-qualified by its reference to possible "departures from said termini or route." That implies a fixing of both route and termini by some sort of predetermination. Otherwise there could be nothing fixed or regular from which to make departures. The time schedules contemplated by the act have the same implication. It is still more apparent from the provision of sec. 4, authorizing departures by any carrier subject to the law "from the route over which it is authorized to operate." The determination of "public convenience and necessity" by the Commission, which is prerequisite to any carrier's operating under the law, seems to refer to the convenience and necessity of operation over ascertained and designated highways. The petition for the certificate of convenience and necessity must show "the public highway or highways over which, and the fixed termini between which, or the route or routes over which it intends to operate;" also and more significant, the "proposed time schedule." The definition itself, as well as its context, shows an intent to exclude rather than include such a general transfer business as that of defendant which

hauls as occasion requires and not over routes or between termini made regular or fixed by predetermining plan or custom.

We have given attentive consideration to, but cannot follow, the contrary argument. The argument of the Attorney General seeks first and mainly to bind us by the finding, made by the Railroad and Warehouse Commission and confirmed by the district court, that defendant does operate between fixed termini, there being no claim that its routes are regular. The statute does make it a question of fact to be determined by the Commission but the finding is not conclusive. As applied to this case the fact goes to the jurisdiction of the Commission and would be open to judicial review even though the statute declared to the contrary, which it does not.

Next, it is argued that the termini of defendant's hauls are fixed within the meaning of the statute. That claim we have already considered. We cannot allow it and no such claim prevailed in any of the cases cited to us, inter alia, Chelan Transfer Co. v. Foote, 130 Wash. 511, 228 Pac. 297; N. Y. N. H. & H. R. Co. v. Deister, 253 Mass. 178, 148 N. E. 590. The former case involved transport between definite "points named in the appellant's certificate" of public convenience and necessity; the latter, motor bus operation "on public highways between Boston and Brockton, having a fixed terminus in each city." Holmes v. R. Comm. of Cal. (Cal.) 242 Pac. 486, is equally void of application to the present problem. It had to do only with motor traffic "over the public highways between San Francisco and San Jose and intermediate points along and over the same routes and roads over which" the complainants were already "certified carriers." In each of these cases there was present the regularity of route and fixity of termini, the result of the predetermination of plan or custom, both of which are so conspicuously absent from this case.

Judgment reversed.