[Sac. No. 4186. In Bank.—July 5, 1929.]

V. L. HAYNES et al., Respondents, v. HARRY C. MAC-FARLANE, Appellant.

Sidney J. W. Sharp and M. L. Short for Appellant.

G. L. Aynesworth for Respondents.

Carl I. Wheat, Reginald L. Vaughan and Roderick B. Cassidy, *Amici Curiae* on Behalf of the Railroad Commission.

SHENK, J.—This is an appeal from a judgment enjoining the defendant from transporting property by autotruck for compensation between Fresno and Hanford and from performing any further services as a transportation company in the carriage of property for compensation between said termini until he shall have obtained a certificate of public convenience and necessity from the Railroad Com-

mission. The judgment also awarded the plaintiffs seven hundred dollars as damages suffered by them at the hands of the defendant.

The judgment was based on a stipulation of facts wherein, among other things, it was agreed that if judgment should go for the plaintiffs the damages suffered by the plaintiffs should be deemed to be seven hundred dollars.

At all of the times mentioned in the controversy between the parties the plaintiffs were and are engaged in the business of a common carrier of freight by autotruck between Fresno and Hanford, and during all of said times have held and now possess a certificate of public convenience and necessity issued by the Railroad Commission permitting them to operate a truck line for the transportation of freight for hire between said points. On or about July 3, 1926, the plaintiffs filed a complaint with the Railroad Commission against the defendant, alleging that he was engaged in the business of a common carrier of freight by autotruck between Fresno and Hanford without a certificate of public convenience and necessity therefor from the Railroad Commission. The commission, after notice to the defendant and a hearing, found in accordance with the allegations of the complaint and ordered the defendant to discontinue his business so conducted, making the order effective as of April 26, 1927. Prior to the effective date of the order the defendant arranged with his customers for the carriage of freight by written order only. On April 27, 1927, or the day after the effective date of the order of the commission, the defendant entered into seven written contracts with his former customers for the continued carriage of such freight for hire between said points, and, unless restrained by order of the court, intends to and will accept and enter into at least twenty additional contracts for the carriage of freight for hire between said points with individuals, firms and corporations, including some who may be customers of the plaintiff, and all of whom will be wholesalers or retailers of merchandise in the cities of Fresno and Hanford. These contracts are identical in form except as to the name of the shipper, who is the party of the second part, the defendant being the party of the first part. It is recited therein that whereas the party of the second part "is desirous that the party of the first part perform for him certain hauling of

merchandise'' and whereas ''the party of the second part has requested that the party of the first part haul merchandise for the party of the second part to and from Hanford and Fresno and to and from other points, as and when requested by the party of the second part. . . . '' It is then provided that the party of the first part agrees to haul merchandise for the party of the second part to and from any point within a radius of fifty miles of Hanford, and agrees to accept as full payment therefor the sum of four dollars per ton. The party of the second part agrees to employ the party of the first part when and as the party of the second part desires to have said party of the first part haul merchandise and to pay therefor the price agreed upon. Each contract is to continue for a period of six months, terminable, however, on thirty days' notice from one party to the other. The contract contains the following paragraph: ''It is distinctly understood and agreed that this contract is entered into with the party of the first part as a private contract carrier and not otherwise, and that said party of the first part reserves all of the privileges and rights of a contract carrier, and does not by virtue of this agreement, or otherwise, hold himself out as or operate as a common carrier, anything in this contract to the contrary notwithstanding.''

On the stipulation of facts the trial court found the defendant to be ''a transportation company'' in his operations between Fresno and Hanford and as defined in section 1 (c) of the Auto Stage and Truck Transportation Act (Stats. 1917, p. 330). The order or injunction was accordingly issued, but was directed only to the operations of the defendant between the fixed termini of Fresno and Hanford. The stipulation of facts is made a part of the record on this appeal. It appears therefrom that the Railroad Commission, as a basis for its ''cease and desist'' order effective April 26, 1927, found that the defendant was theretofore engaged in the business of a common carrier between Fresno and Hanford. Its finding in that regard was based in part on the evidence of the defendant, who testified that he was hauling freight for hire between said points on written orders and for all who desired him to haul for them. This finding was not challenged by the defendant, except before the commission, for no application was made to this court to

annul the order based thereon. On the stipulation of facts the trial court made the same finding, that is to say, that since the effective date of the Railroad Commission's order against him the defendant was and continued to operate as a transportation company as defined by the statute notwithstanding the fact that in so operating he was working under the written contracts above outlined. ■ The question is therefore presented whether an autotruck operator, hauling freight on the public highways for compensation between fixed termini and over a regular route, may avoid regulation under the Auto Stage and Truck Transportation Act by entering into and operating under numerous so-called private contracts with his customers.

It is the contention of the defendant that by reason of his present method of operation under so-called private contracts the Railroad Commission would be bound to find that he was a private carrier under the authority of *Frost* v. *Railroad Com.*, 271 U. S. 583 [47 A. L. R. 457, 70 L. Ed. 1101, 46 Sup. Ct. Rep. 605], and *Holmes* v. *Railroad Com.*, 197 Cal. 627 [242 Pac. 486]. It is then argued that, having so found, the Railroad Commission would have no jurisdiction over his operations and consequently the trial court would lack authority to enjoin him from so operating.

It may be conceded that if the defendant's present status is that of a private carrier the judgment appealed from is without legal support, for the alleged violation of the statute by the defendant as a common carrier is the basis of the injunction order. ■ Whether the status of a freight autotruck operator is public or private in character is primarily a question of fact in each case. In the Frost case the Railroad Commission found the carrier to be in effect a private carrier but nevertheless a transportation company as defined by section 1 (c) of the Auto Stage and Truck Transportation Act as amended in 1919 (Stats. 1919, p. 458), for the reason that the term "transportation company" as defined by the amended statute was broad enough to include a private carrier. The order of the Railroad Commission was affirmed by this court (*Frost* v. *Railroad Com.*, 197 Cal. 230 [240 Pac. 26]), but the judgment was reversed by the Supreme Court of the United States on the ground that the state did not possess the power to compel a private carrier to assume against his will

the duties and burdens of a common carrier and that any attempt to exercise such a power must fall before the paramount authority of the fourteenth amendment to the federal constitution. In the Holmes case the Railroad Commission likewise found the carrier to be a private carrier but nevertheless enjoined it from further operations unless and until it should agree to assume the duties and burdens of a common carrier. Although the Holmes case was taken to the Supreme Court of the United States the appeal was abandoned following the decision of that court in the Frost case. But the Holmes case can no more be taken as authority supporting the jurisdiction of the Railroad Commission to regulate private carriers than can the Frost case, for the reason that both cases rested upon similar states of fact and involved the same questions of law. The fundamental distinction between the Frost and the Holmes cases and the present case is that in those cases the carrier was found to be a private carrier while in the present case the carrier has been found, both by the Railroad Commission and by the trial court, to be a common carrier. The basis of the finding of the Railroad Commission in the Frost case that the carrier was private was that the carrier was operating under a private contract under such circumstances as removed it from the status of a common carrier. Such was also the situation in the Holmes case. And the finding in each case was left undisturbed. In commenting on the opinion of this court in the Frost case with reference to carriers operating under private contracts, the Supreme Court of the United States said: "The court below seemed to think that, if the state may not subject the plaintiffs in error to the provisions of the act in respect to common carriers, it will be within the power of any carrier, by the simple device of making private contracts to an unlimited number, to secure all the privileges afforded common carriers without assuming any of their duties or obligations. It is enough to say that no such case is presented here, and we are not to be understood as challenging the power of the state, or of the railroad commission under the present statute, whenever it shall appear that a carrier, posing as a private carrier, is in substance and reality a common carrier, to so declare and regulate his or its operations accordingly."

In the present action we have just such a case as was referred to in the foregoing statement. The fact that the defendant in his contract called himself a "private carrier" could not make him such in the light of the undisputed facts to the contrary. Here we have a carrier found on sufficient evidence by the Railroad Commission and the court to be a common carrier, posing as a private carrier, in an obviously deliberate attempt to evade public regulation. The Railroad Commission found him to be a public carrier. That finding became final long before the present action was brought and is not subject to review in this action. The trial court found that the status of the defendant had not been changed by the so-called "private contract" method of his operations and the record supports the finding and conclusion based thereon. If such a studied attempt to evade the provision of the statute should prove availing the law would become a nullity and the primary purpose of the act to regulate autotruck transportation companies would come to naught. (See *Motor Transit Co.* v. *Railroad Com.*, 189 Cal. 573 [209 Pac. 586].) It is unnecessary to comment upon the many cases cited by counsel for the parties and for *amici curiae*. No court case has been found which upon similar facts is not in harmony with the conclusions herein expressed.

The judgment is affirmed.

Richards, J., Seawell, J., Preston, J., Curtis, J., Langdon, J., and Waste, C. J., concurred.