[S. F. No. 14872. In Bank.—November 29, 1933.]

FRANK P. GEORGE et al., Petitioners, v. THE RAILROAD COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

Gwyn H. Baker for Petitioners.

Arthur T. George, Ira H. Rowell and Roderick B. Cassidy for Respondents.

THOMPSON, J.—On October 21, 1932, the California Transportation Company, Sacramento Navigation Company, Fay Transportation Company, the Western Pacific Company and the Sacramento Northern Railway filed a complaint before the Railroad Commission of the state of California charging that Frank P. George and Tony P. George, a co-partnership doing business sometimes under the name of George Brothers and sometimes as Associated Contract Freight Haulers, were conducting a business as common carriers of freight between San Francisco and Sacramento and intermediate points, and praying for an order of the commission requiring them to cease and desist from such common-carrier operations. The defense interposed by the petitioners was to the effect that they were not acting as a common carrier, but only as a private or contract carrier, and were not operating between fixed termini or over a regular route. On January 6, 1933, the respondent commission made its order requiring the petitioners to cease and desist. We are asked, in this proceeding in *certiorari*, to annul the order on the ground that there is no evidence to sustain the finding of the commission that petitioners were

operating as a common carrier between fixed termini and over a regular route.

It thus becomes necessary to set down and examine the testimony adduced for the purpose of ascertaining if there be any substantial evidence to justify the finding mentioned. A representative of the Public Food Stores testified that, between August 29, 1932, and December 12th of the same year, they shipped sixteen loads of freight from San Francisco to Sacramento, consigned to themselves. By agreement with petitioners the rate was fixed at twenty cents for 100 pounds when the tonnage was five tons or less, and at a lesser rate when over that weight. It was understood that petitioners should, and they did, between the dates mentioned, call at the Public Food Stores in San Francisco every Monday morning for goods to be delivered to the Sacramento store on Tuesday. These sixteen shipments were evidenced by freight bills issued by the Associated Contract Freight Haulers, subject to certain provisions on the reverse side thereof, reading as follows:

"(1) All freight bills will be sent immediately with a signature of consignee upon return of truck.

"(2) All accounts must be paid weekly upon receipt of statement.

"(3) The carrier will make a reasonable charge for the detention of any truck for loading and unloading and may add such charge to all other charges hereinafter and hold such property subject to a lien thereon.

"(4) The carrier may make a reasonable charge for a second delivery of all property which has been previously offered for delivery and returned through no fault of the carrier.

"(5) The carrier will not be liable for any damage or loss of goods after being transferred to any company for delivery.

"(6) The carrier will not be liable for any claim of any description unless said claim is filed within ten (10) days from date of shipment. This freight bill must accompany any claim for overcharge, loss or damage.

"(7) No carrier is bound to transport said property in time for any particular market, or otherwise than with reasonable dispatch, unless by special agreement.

"(8) Every party, whether principal or agent, shipping explosives or dangerous goods without previous full written disclosure to the character of their nature shall be liable for all damage caused thereby and such goods may be warehoused at owners risk and expense, or destroyed without compensation.

"(9) This carrier shall not be held liable for any amount on goods not properly packed, nor on Fragile Fabrics, unless plainly marked as such; nor on articles consisting of or containing glass, unless so marked and packed so as to insure safe transportation by express with ordinary care and the shipper agrees that the Company shall not be liable in any event for more than Fifty ($50.00) Dollars for any shipment unless a greater value is stated herein and so billed.

"(10) Associated Contract Freight Haulers have the right to refuse any load at any time.

"(11) Upon arrival of truck at shippers destination. (,) truck failing to pick up load through fault of shipper, shipper must pay at the rate of 25c per mile from place of pick up to destination of consignee." The freight bills issued for the first seven shipments did not contain the eleventh provision.

A shipping clerk for Wellman, Peck & Company testified that the petitioners had done the hauling of groceries to their plant in Sacramento for something over a year, calling for loads on Monday and Tuesday of each week. He said it was agreed that each load should be not less than ten tons and that the parties should have the right to terminate the arrangement "at their pleasure". Included in the exhibits explaining the method of handling the freight of the Wellman, Peck Company are two "agreements for transportation by private contract carrier" describing the weight, rate, time of pick-up and delivery, and covering the loads of May 16 and May 19, 1932. The other exhibits referring to the transactions with this firm are freight bills such as those used in the instance of the Public Food Stores and copies of the usual uniform bills of lading. The two firms above mentioned had no freight to be transported from Sacramento to San Francisco.

However, it appears from other testimony that during the year 1932, the petitioners hauled from Sacramento to San

Francisco approximately fifty loads of beans and rice for the Trinidad Bean and Elevator Company, S. M. Sorensen & Company, the Capitol Rice Company, the Phillips Milling Company, Sinsheimer & Company and the Lompoc Produce & Real Estate Company. Among the exhibits evidencing these loads there are a few private contract carrier agreements, but the exhibits consist, for the most part, of freight bills such as those already described. It also appears from the exhibits that petitioners hauled produce for most of these firms between points other than Sacramento and San Francisco, for example, to San Francisco from Oakland, Marysville, Soledad, Lodi, Stockton, and from as far south as Lompoc. The shipping documents issued in connection with these hauls also consist mainly of freight bills.

Without setting down in detail the testimony regarding other features of these transactions, we can properly say that, except as to Wellman, Peck & Company and the Public Food Stores, it discloses that special arrangements were made for petitioners to secure a load at a particular time and transport it to its destination and that the business had been largely solicited by one or the other of the petitioners. The petitioners testified, and there was some other testimony supporting them, that they reserved the right to refuse to haul for any of their customers or for anyone else, and had, in fact, discontinued hauling for some of the firms mentioned. This testimony is weakened to some extent by other testimony showing they had practically all the tonnage they could haul conveniently.

Subsection (c) of section 1 of the Auto Stage and Truck Transportation Act (Deering's Gen. Laws, 1931, p. 2534) defines a transportation company subject to the regulatory power of the respondent commission as follows:

"The term 'transportation company' when used in this act means every corporation or person, . . . owning, controlling, operating or managing any auto truck used in the business of transportation of property, or as a common carrier of property, for compensation, over any public highway in this state between fixed termini or over a regular route, . . . "

It cannot be doubted, from the evidence recited, that the respondent commission was fully justified in concluding that petitioners operated between Sacramento and San

Francisco, or between fixed termini and over a regular route. In this connection it is to be noted that the order to cease and desist did not attempt to compel the petitioners to cease operations except between these cities and intermediate points. With respect to this latter part of the definition then, there can be no question. The other half concerns itself with the problem of whether petitioners were doing business as a common carrier within the meaning of the Auto Stage and Truck Transportation Act, *supra*. In *Haynes* v. *McFarlane*, 207 Cal. 529 [279 Pac. 436], this court said: "Whether the status of a freight autotruck operator is public or private in character is primarily a question of fact in each case." The respondent commission attached considerable importance to the fact that petitioners issued, during all of the latter part of 1932, the freight bills heretofore discussed and uniform or standard bills of lading. In its opinion it directs attention to the fact that, while petitioners claim they reserved the right to refuse shipments, there is no showing that they refused any freight to be carried over the route in question and, as has already been noted, they had all the freight they could conveniently handle. Under these circumstances it is impossible for us to hold that the commission was not justified in its conclusion. The order is affirmed.

Shenk, J., Preston, J., Waste, C. J., Curtis, J., Langdon, J., and Seawell, J., concurred.