[Sac. No. 5805.   In Bank.   Mar. 14, 1947.]

CHARLES BRIGNOLI et al., Plaintiffs and Appellants, v.
  SEABOARD TRANSPORTATION CO. (a Corporation)
  et al., Defendants and Appellants.

Hauerken, Ames & St. Clair, Gumpert & Mazzera, George H. Hauerken, J. Calvert Snyder and Alden Ames for Plaintiffs and Appellants.

Neumiller, Ditz, Beardslee & Sheppard and R. L. Beardslee for Defendants and Appellants.

EDMONDS, J.—Charles Brignoli and Charles Trombetta, doing business as Rampone Brothers, sued Seaboard Transportation Company, a corporation, to recover for trucking services rendered to it. Seaboard admitted liability to the amount of approximately $7,100, but by cross-complaint demanded over $14,000 on account of the loss of goods by fire while entrusted to Rampone Brothers for carriage. Rampone Brothers have appealed from an order granting a new trial after judgment upon a verdict in their favor, and there is also an appeal from the judgment. The principal questions for decision concern the instructions to the jury.

Before the trial, Seaboard was dissolved, and Walter A. Junge, its principal stockholder, took over its assets, assumed its liabilities, and continued the business under the same name. Counsel then stipulated that any judgment rendered in the action shall inure to the benefit of and shall bind Walter A. Junge, doing business as Seaboard Transportation Company, and that the name Seaboard Transportation Company, when referred to or mentioned in the pleadings or elsewhere, shall include Junge, doing business as Seaboard Transportation Company, as well as the dissolved corporation. The word "Seaboard" will, therefore, now be used with the meaning stated in the stipulation.

The complaint alleged a common count for services rendered in the amount of $8,348.24 during the preceding two years. By answer, Seaboard admitted indebtedness of $7,166.48. The answer included a counterclaim, pleaded in two counts, which was treated by the parties and the court as constituting a cross-complaint. In the first count, Seaboard charged that it had delivered to Rampone Brothers, as a common carrier, goods belonging to the United States of America. In the course of transit, and while in their exclusive possession and control, Seaboard alleged, the goods were damaged or destroyed in the amount of $14,486.98. The second count alternatively pleaded that the goods received by Rampone Brothers in the capacity of a contract carrier were destroyed or damaged in transit by their negligence.

In answering the cross-complaint, Rampone Brothers admitted that they received the goods from the corporation for carriage. The destruction of, or damage to, the goods was also admitted, but they denied that they were then acting as a common carrier. Affirmatively, it was alleged that the goods, received in the capacity of a private or contract carrier, were

destroyed or damaged by fire while in their possession and under their control but without any fault on their part.

Upon these issues, evidence was presented showing the following facts: Rampone Brothers, engaged in the trucking business, were duly licensed by the Railroad Commission of the State of California as a radial highway common carrier and a highway contract carrier. (See Highway Carriers' Act, Stats. 1935, p. 878 as amended; Deering's Gen. Laws, Act 5129a.) Their application to act as a radial highway common carrier specified the area to be served as that within a radius of 150 miles from Oakland. They also held a certificate of public convenience and necessity issued under the provisions of the Public Utilities Act for the transportation of fresh fruits, vegetables and canned goods. (See Deering's Gen. Laws, Act 6386, § 50¾.) Seaboard was licensed as a radial highway common carrier.

The principal business of Rampone Brothers was the transportation by motor truck, of such freight from the delta region of the San Joaquin and Sacramento Rivers to Oakland and San Francisco. Most of this hauling was done under the common carrier franchise. During the winter months, they also hauled other commodities for various shippers, including Seaboard, to divergent parts of the state. In 1943, some of at least 56 accounts on Rampone Brothers' books showing charges for services as a common carrier included entries for carrying freight other than fresh fruits, vegetables and canned goods for distances in excess of 150 miles from Oakland. On occasion, they refused to carry particular freight.

The United States Army had a contract with Seaboard to haul goods from certain points near Stockton. Upon verbal notification from the Army that it had freight to move, Seaboard would accept delivery of the goods and assume full common carrier liability. When the corporation did not have sufficient equipment of its own to handle all of the shipments offered, Seaboard sublet portions of these movements to Rampone Brothers and other truckmen, paying for such services an amount less than the charge to the government.

Commencing in 1941, Rampone Brothers carried Army freight for Seaboard but they had no written or oral agreement with Seaboard except as to rate of pay, and there was no agreement as to the basis or extent of their liability. The usual procedure was that Seaboard would ask Rampone Brothers to send specified equipment to the corporation's dis-

patcher at an Army base. The goods were loaded and checked by Army personnel, and Seaboard issued its bill of lading to the Army. The driver received a "dray tag" from the corporation's dispatcher and after obtaining a clearance from the Stockton office of the corporation, proceeded to the designated destination.

The present controversy concerns Army freight which Seaboard requested Rampone Brothers to haul from Stockton. The corporation had issued to the Army a bill of lading covering the goods. The driver, employed by Rampone Brothers and driving a diesel tractor, semi-trailer and rear trailer, proceeded to the depot where the crates, boxes, and bundles were loaded on the truck by Army personnel.

About 175 miles from Stockton, the driver felt the truck "pulling heavy." Upon examining his equipment he found that the two right front tires of the rear trailer had blown out. The blown-out tires were warm but not hot. According to the driver's testimony, he knew that blown-out tires sometimes become hot and cause fire. There was only one spare for the rear trailer. After about 30 to 45 minutes, with three flares placed near the edge of the pavement, the driver left the vehicle unattended and hailed a passing motorist. He was taken to Pixley, a town about a mile and one-half away, where he telephoned to Rampone Brothers for additional tires. Upon the driver's return, some 45 minutes later, he found the semi-trailer in flames and the front one-fourth of the rear trailer burning. The evidence does not show with any certainty the cause of the fire. According to the driver, the wind was then blowing from the rear trailer toward the semi-trailer. With the help of the fire and police departments, the rear trailer and much of its load were saved, but the semi-trailer and the freight it was carrying were completely destroyed. The Army claimed $14,486.98 as the amount of its loss and Seaboard paid that sum in settlement.

In instructing the jury, considerable emphasis was placed by the trial judge upon the liability of a radial highway common carrier, a highway common carrier, and a highway contract or private carrier, but the only instructions given defining these carriers were as follows: "There are two classes of common carriers operating upon the highways of this State in intra-state commerce. The first class is called a 'highway common carrier' and the second class is called a 'radial highway common carrier.' A 'highway common carrier' is one

who dedicates and holds out his transportation services generally to the public, or a substantial portion thereof, for compensation, for the transportation of some certain variety or varieties of freight, at rates filed with the Railroad Commission of the State of California and who usually or ordinarily operates between fixed termini or over a regular route. Before commencing his operations as such, a 'highway common carrier' is required to make a showing before the Railroad Commission sufficient to justify and culminating in the issuance by the Commission of a certificate that declares that public convenience and necessity requires such operation. A 'radial highway common carrier' is one who dedicates and holds out his transportation services generally to the public, or a substantial portion thereof, for compensation, for the transportation of some certain variety or varieties of freight, and who does not usually or ordinarily operate between fixed termini or over a regular route, and who offers to serve anyone within the scope of his dedication, which scope must be a clearly defined area.'' The court also instructed the jury: ''Everyone who offers to the public to carry persons, property or messages, is a common carrier of whatever he thus offers to carry. To impress upon one the character of a common carrier, it must be shown that he undertakes generally and for all persons indifferently to carry goods and deliver them for hire; and that his public profession of his employment be such that if he refuses, without some just ground, to carry goods for every one, in the course of his employment, and for a reasonable and customary price, he will be liable to an action. . . .'' As a part of this instruction, proposed by Rampone Brothers, which was the only one defining a private or contract carrier, the court stated: ''A private or contract carrier, on the other hand, is not bound to carry for every person and can refuse to do so without incurring any liability.'' In another instruction the jury was told: ''If you find from the evidence that . . . at the times here in this case involved, the plaintiffs, by virtue of their calling, and as a regular business, undertook to transport goods from place to place, offering their services to such as chose to employ them and pay their charges, then I instruct you that plaintiffs were a common carrier.''

About two hours after the jurors commenced their deliberations, they requested further instruction as to the distinction between a common carrier, a contract carrier, and a radial

carrier. The first of the quoted instructions was again read to the jury, and upon being asked by the court, ''Does that answer your question in reference to that point?'', the foreman replied, ''Yes, sir.'' To the foreman's question as to the meaning of ''the radial area,'' the trial judge replied that the answer would have to be found in the evidence. He then asked the jurors if they understood the meaning of ''private carrier'' and they collectively replied, ''Yes.'' But upon inquiring whether the jurors wished to have any other instruction read, one of them asked, ''The contract carrier now.''

In response to this request the judge reread the instruction regarding the difference in liability between a common and contract carrier and stated: ''A carrier may be a common carrier as to certain types of merchandise, and be a contract carrier as to other types of merchandise, and this will depend upon the conduct of the carrier or the agreement of the carrier with the shipper, or both. The true test as to whether or not a carrier is a common carrier or a private carrier is not what the company is empowered to do, but what it is actually engaged in doing.'' After a further question from one of the jurors, counsel stipulated that the liability of a radial common carrier is exactly the same as that of a common carrier.

The instruction requested to be given by Seaboard but refused by the court reads as follows: ''A contract or private carrier is distinguished as one who does not dedicate and hold out his transportation service generally to the public or a substantial portion thereof, but who is employed by a select and limited group of shippers as a private carrier for an agreed compensation to the exclusion of all others by a mutually binding contract entered into and performed in good faith for an agreed term, and which contract mutually binds the carrier to transport and the shipper to supply a specific category of freight and which contract is definite as to the following: 1. The time involved in the performance of the contract; 2. The route and/or termini and/or area involved in the performance of the contract; 3. The kind of commodity or commodities involved in the contract; 4. The tonnage to be hauled; 5. The compensation to be paid and received.''

In accordance with a stipulation of the parties, a directed verdict was returned in favor of Rampone Brothers for $8,197.02 as the amount due to them for services rendered. Upon the cross-complaint, the jury found in favor of Rampone Brothers, and the only controversy now at issue concerns the

question of liability for the goods damaged or destroyed by the fire.

In a memorandum opinion stating the grounds upon which the motion for a new trial was granted, the trial judge declared: ". . . Failure of the Court, through inadvertence, to give the defendant's instruction defining a private carrier constituted the error of law which I believe, under the peculiar circumstances of this case, confused the jury and seriously affected the outcome of the trial. . . . I consider it quite significant that the jury, after retiring, returned to the courtroom and requested that the court point out the 'distinction between a common carrier, a contract carrier and a radial carrier.' This indicates that the jurors were confused; and I am convinced now that the Court did not clarify the matter by giving them the definitions requested. At first blush it would appear that the error was rather trivial; that the jurors, armed with the correct definition of what constituted a common carrier could, by a sort of process of elimination, solve the problem for themselves, since a carrier which is not a common carrier necessarily has to be a private carrier. But a jury is not required to undertake any such task. . . . It has been held that when instructions are confusing and questions by the jurors indicate such confusion and the same is not cleared up by the Court, a new trial should be granted. . . ."

In appealing from the order granting the motion for a new trial and as cross-respondents in the appeal from the judgment, Rampone Brothers contend that, because recovery by Seaboard rested upon the theory that they were doing business as a common carrier, an instruction defining the characteristics of a contract carrier was not relevant. And since Seaboard adopted exclusively the theory that they were a common carrier, it is now estopped from asserting liability upon another basis. Furthermore, it is argued, the verdict of the jury supports the implied findings that they were a contract carrier and were not negligent. Also, say Rampone Brothers, because the motion for a new trial was not granted for insufficiency of the evidence, the ruling constitutes an implied finding by the court that they were not a common carrier. A further contention is that the evidence would not support a verdict in favor of the corporation. Moreover, the jurors were correctly, fully, and clearly instructed on the distinction between a common and a contract carrier. Their inquiries show

that they were not confused in this regard and the instruction proposed by Seaboard defining a contract carrier was not a correct statement of the law. Under these circumstances, Rampone Brothers conclude, the record shows neither error nor a "miscarriage of justice," and the granting of a new trial was an abuse of discretion. In any event, it is urged, they should not be required to retry the cause of action for services because Seaboard has admitted liability for the amount of the judgment.

As justifying the order, it is evident from the pleadings, Seaboard contends, that the case was tried upon the alternative theories of liability either as a common carrier or as a contract carrier; therefore, an instruction defining the characteristics of a contract carrier was relevant and essential because, to understand fully the obligations of a common carrier, necessarily one must know the definition of a contract carrier, and vice versa. In granting a motion for a new trial upon a ground other than insufficiency of the evidence, says Seaboard, although the ruling, in effect, is that there is sufficient evidence to support the verdict, it does not import that there is insufficient evidence to support a contrary verdict. Seaboard also contends that the instructions stating the distinction between a common and contract carrier were inadequate, and that, as was clear from the jurors' inquiries, they were confused and could easily have been misled. The requested instruction defining a contract carrier, refused by the trial court, was a correct statement of the law, says Seaboard, and there was substantial evidence to support a finding that Rampone Brothers are liable, either as a common carrier or a contract carrier. In conclusion, Seaboard argues, the granting of the new trial rested in the wide discretion of the trial court, and the refusal to instruct fully the jury on the characteristics of a common and contract carrier by more explicitly defining a contract carrier resulted in a "miscarriage of justice" requiring a new trial.

A new trial may be granted upon the ground of "errors in law occurring at the trial" when an instruction has been given which includes an incorrect or incomplete statement of the law applicable to a material issue, and the error was not cured by the charge as a whole or otherwise rendered harmless. (Code Civ. Proc., § 657, subd. 7; *Mazzotta* v. *Los Angeles Ry. Corp.*, 25 Cal.2d 165 [153 P.2d 338]; *Fennessey* v. *Pacific Gas & Elec. Co.*, 10 Cal.2d 538 [76 P.2d 104]; *Conroy*

v. *Perez*, 64 Cal.App.2d 217 [148 P.2d 680] ; see 20 Cal.Jur. 139, 140.) ▆ And where it appears that an erroneous instruction confused or misled the jury, a new trial is justified. (*Brown* v. *George Pepperdine Foundation*, 23 Cal.2d 256, 262 [143 P.2d 929].)

▆ In the present case the characteristics of the relationship of a common carrier and that of a contract or private carrier were of vital importance. The pleadings, evidence, instructions, and memorandum of opinion on motion for the new trial, show that the case was tried upon both theories of liability and there is no basis for an estoppel against Seaboard. The instruction concerning a contract carrier was incomplete (see *Rampone* v. *Leonardini*, 39 C.R.C. 562 [Dec. No. 28526] ; *Matter of Fred Belli*, 41 C.R.C. 1 [Dec. No. 30382]) and therefore erroneous.

▆ Furthermore, the statement in the instruction relating to a private carrier, that a common carrier is one who undertakes generally and for all persons indifferently, to carry goods and if he refuses, without some just ground, to carry goods for every one he is liable in damages, is too broad. Also it is inconsistent with the first instruction to the effect that a common carrier is one who holds his transportation services out to a substantial portion of the public for some variety or varieties of freight. In view of the questions posed by the jurors during their deliberations, it is evident that they were endeavoring to obtain a clear understanding in regard to the characteristics of the relationship of each type of carrier.

▆ The trial court in considering a motion for a new trial is not bound by a conflict in the evidence, and does not abuse its discretion in granting the motion where there is any evidence which would support a judgment in favor of the moving party. (*Ballard* v. *Pacific Greyhound Lines*, 28 Cal.2d 357, 358 [170 P.2d 465].) ▆ When the order is made upon a ground other than that of insufficiency of the evidence, the court impliedly holds that there is sufficient evidence to support the verdict, and "on appeal from such order it will be conclusively presumed that the order was not based upon that ground." (Code Civ. Proc., § 657 ; *Fennessey* v. *Pacific Gas & Elec. Co., supra*, p. 544.) But such a ruling does not include an implied determination, as Rampone Brothers contend, that there is insufficient evidence to support a contrary verdict.

The capacity in which Rampone Brothers was acting at the time of the fire was a question of fact primarily for the jury (*George* v. *Railroad Com.*, 219 Cal. 451, 456 [27 P.2d 375]; *People* v. *Duntley*, 217 Cal. 150, 165 [17 P.2d 715]; *Haynes* v. *MacFarlane*, 207 Cal. 529, 532 [279 P. 436]), and there is evidence in the present record tending to prove a common carrier relationship. The number and varied types of accounts in the books of Rampone Brothers for charges as a common carrier, the lack of definiteness of the agreement between the parties in certain particulars, and the fact that they were licensed and operating as a radial highway common carrier, would support a determination that there was such a relationship as to the particular shipment in controversy.

The liability of a carrier of that kind for damage to property in transit under the contract to transport is practically absolute (*Anheuser-Busch, Inc.* v. *Starley*, 28 Cal.2d 347, 349 [170 P.2d 448]), and the burden is upon the carrier, if it would escape liability, to show that the loss resulted from one of the causes stated as an exception to the general rule. (Civ. Code, § 2194; see 4 Cal.Jur. 870.) The question of negligence also was for the jury. (*Wright* v. *Los Angeles Ry. Corp.*, 14 Cal.2d 168, 176 [93 P.2d 135].) The failure to equip the rear trailer with more than one spare tire, and the driver's conduct in leaving the equipment loaded with valuable supplies unattended, would have justified a finding of negligence.

Whether or not the rights of the moving party were prejudiced by an error of law occurring at the trial is a matter which rests so completely within the discretion of the trial judge that an appellate court will not interfere with his action in granting a motion for a new trial upon that ground except for a manifest abuse of discretion. (*Mazzotta* v. *Los Angeles Ry. Corp., supra*, p. 169; *Mathers* v. *County of Riverside*, 22 Cal.2d 781, 786 [141 P.2d 419]; *Fennessey* v. *Pacific Gas & Elec. Co., supra*, p. 544.) In the present case, the instructions were carefully considered by the trial judge and he concluded that the failure to fully define for the jury the relationship of a contract highway carrier prejudiced Seaboard's rights. The record shows no abuse of discretion in this regard.

The order granting a new trial is affirmed, and the appeal from the judgment is dismissed. However, in view of Seaboard's admitted liability for services rendered by Rampone

Brothers, the issues upon the new trial should be limited to the liability, if any, of Rampone Brothers, for the loss and damage by fire.

Gibson, C. J., Shenk, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I concur in the conclusion reached in the majority opinion upon the sole ground that the trial court erred in failing to give Seaboard's proposed instruction No. 13 defining a contract carrier. The definition of a contract carrier contained in the instruction which the court gave was incomplete and may have operated to confuse the jury. This was the view taken by the trial court in ruling on the motion for a new trial, and it is impossible for us to say that such was not the case. If the instruction proposed by Seaboard had been given, the jury would then have had before it a correct definition of a contract carrier and would have been in a better position to determine the liability of Rampone Brothers for the loss sustained by Seaboard.

I do not agree with what is said in the majority opinion relative to the instructions given by the trial court defining a common carrier. I see no inconsistency in these instructions and they are both correct. The instruction criticized in the majority opinion as being too broad is as follows: "Everyone who offers to the public to carry persons, property or messages, is a common carrier of whatever he thus offers to carry. To impress upon one the character of a common carrier, it must be shown that he undertakes generally and for all persons indifferently to carry goods and deliver them for hire; and that his public profession of his employment be such that if he refuses, without some just ground, to carry goods for every one, in the course of his employment, and for a reasonable and customary price, he will be liable to an action. . . ." While the foregoing instruction defines a common carrier in general terms, I do not believe it can be said to contain an incorrect statement relative to the requirements of the law necessary to create the status of a common carrier or responsibility which one assumes in acquiring such status. It is true that as stated in another instruction given by the court to the jury: "A 'highway common carrier' is one who dedicates and holds out his transportation services generally to the public, or a substantial portion thereof, for compensation, for the transporta-

tion of some certain variety or varieties of freight, at rates filed with the Railroad Commission of the State of California and who usually or ordinarily operates between fixed termini or over a regular route.'' The definition contained in the instruction last quoted is more limited and specific than that contained in the portion of the instruction first quoted, but it is clear that the instruction first quoted deals with common carriers generally and the instruction last quoted deals specifically with ''highway common carriers'' which operate upon the highways in this state. While the court would have been justified in this case in submitting to the jury a definition of a ''highway common carrier'' only, I do not think it can be said that the court committed prejudicial error in giving a definition in general terms as to what constitutes a common carrier.

Furthermore, it was the contention of Seaboard that in the hauling of the particular load of army supplies involved in this action Rampone Brothers was not operating under a certificate of public convenience and necessity as a ''highway common carrier'' but was acting as a ''radial highway common carrier'' and it was the contention of Rampone Brothers that they were acting as a ''highway contract carrier.'' Such being the contention of the respective parties, there is little likelihood that the jury could have been confused by anything said in the instructions relative to common carriers generally.

TRAYNOR, J.—I dissent.

The problem whether a carrier is a common carrier involves questions of fact and of law. It is for the jury to determine what the facts are; whether the facts establish that a carrier is a common carrier is a question of law for the court. If there is conflicting evidence as to the relationship between the parties, the court must instruct the jury as to the operative facts that legally fix the status of common carrier and private carrier and instruct them that if they find the existence of certain facts they must find that the carrier is a common carrier, but if they find the existence of certain other facts they must find that the carrier is a private carrier. After finding the facts, the jury must follow the instructions of the court, and if there is evidence that reasonably warrants the conclusion reached, their verdict is controlling. If the facts are undisputed and not reasonably susceptible of conflicting in-

ferences, it is the sole responsibility of the court to determine whether the status of common carrier exists, and it is not only unnecessary but improper to instruct the jury as to the distinction between a common carrier and a private carrier. The evidence in the present case as to the relationship between Seaboard and Rampone Brothers is without conflict and not reasonably susceptible of conflicting inferences. It was therefore a question of law for the court whether or not Rampone Brothers were acting as a common carrier. In my opinion they were not. Since Rampone Brothers did not perform the services in question as a common carrier, their liability can be predicated only upon their negligence or the negligence of their driver, and the question whether they acted as a common carrier or private carrier should not have been presented to the jury. No harm was done, however, by doing so, since the jury, as demonstrated by its verdict, did not find that Rampone Brothers acted as a common carrier. The jury was properly instructed as to the negligence issue, and since it determined that issue in favor of Rampone Brothers, there was no ground for granting a new trial.

It is settled that a common carrier may contract to render special services as a private carrier. (*Gornstein* v. *Priver,* 64 Cal.App. 249, 254 [221 P. 396] ; *Santa Fe, P. & P. R. Co.* v. *Grant Bros. Const. Co.* 228 U.S. 177, 185 [33 S.Ct. 474, 57 L.Ed. 787] ; *Baltimore & Ohio S. W. R. Co.* v. *Voight,* 176 U.S. 498 [20 S.Ct. 385, 44 L.Ed. 560] ; *Northern P. R. Co.* v. *Adams,* 192 U.S. 440 [24 S.Ct. 408, 48 L.Ed. 513] ; *Long* v. *Lehigh Valley R. Co.,* 130 F. 870 [65 C.C.A. 354] ; *Bank of Kentucky* v. *Adams Express Co.,* 93 U.S. 174, 186 [23 L.Ed. 872] ; *New York. C. R. Co.* v. *Lockwood,* 17 Wall. (84 U.S.) 357, 377 [21 L.Ed. 627] ; *Wilson* v. *Atlantic Coast Line R. Co.,* 129 F. 774, aff'd, 133 F. 1022 [66 C.C.A. 486] ; *Cushing* v. *White,* 101 Wash. 172, 181 [172 P. 229] ; *Claypool* v. *Lightning Delivery Co.,* 38 Ariz. 262, 269 [299 P. 126] ; *Bernardi Greater Shows Inc.* v. *Boston & Maine R. R.,* 86 N.H. 146, 154 [165 P. 124] ; *Jackson Arch. Iron Works* v. *Hurlbut,* 158 N.Y. 34, 37 [52 N.E. 665, 70 Am.St.Rep. 432] ; *Kimball* v. *Rutland etc. R. Co.,* 26 Vt. 247, 255 [62 Am.Dec. 567] ; *State* v. *Boyd Transfer & Storage Co.,* 168 Minn. 190, 192 [209 N.W. 872] ; *Mengel Co.* v. *Inland Waterways Corp.,* 34 F.Supp. 685, 692; see 13 C.J.S. 32; 9 Am.Jur. 436; 48 L.R.A.N.S. 990.) In all these cases it was determined as a matter of law whether or not the engage-

ment in question was so different from the services offered to the public that the carrier was not a common carrier. As the United States Supreme Court declared in *Bank of Kentucky* v. *Adams Express Co.*, 93 U.S. 174, 186 [23 L.Ed. 872] : ''We do not deny that a contract may be made which will put a common carrier on the same level with a private carrier for hire, as respects his liability for loss caused by his acts or omissions of others. . . . But what we have to decide in these cases is, whether the contract proved has that operation.'' (See *Kimball* v. *Rutland etc. R. Co.*, 26 Vt. 247, 255 [62 Am. Dec. 567] ; *Jackson Arch. Iron Works* v. *Hurlbut*, 158 N.Y. 34, 37 [52 N.E. 665, 70 Am.St.Rep. 432].) The rule is stated in 13 C.J.S. 32, as follows: ''The question whether a contract of carriage changes the relation of the carrier from that of a common carrier to that of a private carrier is one of law.''

The cases decided by this court cited in the majority opinion do not hold to the contrary. In *Haynes* v. *MacFarlane*, 207 Cal. 529 [279 P. 436], a common carrier sought to escape liability as such by designating himself a private carrier in his contracts and by reserving ''all of the privileges and rights of a contract carrier.'' Since public policy prevents a common carrier's repudiating his liability as such with respect to transactions in which he is ''in substance and reality a common carrier,'' this court held that such a contract did not protect the carrier against claims based on his obligations as a common carrier. ''The fact that the defendant in his contract called himself a 'private carrier' could not make him such in the light of the undisputed facts to the contrary.'' (207 Cal. 529, 534.) In that case the question whether the carrier acted as a common carrier was determined as a question of law by this court. The statement in the decision: ''Whether the status of a freight auto truck operator is public or private in character is primarily a question of fact in each case,'' means that the legal conclusion whether a carrier has acted in the capacity of a common carrier depends on what he actually did rather than on the language of the contract that he made with the shipper. In *People* v. *Duntley*, 217 Cal. 150 [17 P.2d 715], the court was concerned with the question whether a tax imposed upon common carriers was properly imposed upon the defendant. It was held that the findings of the trial court as to the transactions undertaken in the conduct of defendant's business were supported by the evidence and that from these findings the legal conclusion could reasonably be drawn

that defendant was not a common carrier. In *George* v. *Railroad Com.*, 219 Cal. 451 [27 P.2d 375], the conclusion of the commission that petitioners were common carriers was sustained by the same reasoning.

In the present case the unconflicting evidence shows that Rampone Brothers undertook to furnish Seaboard with trucking equipment and a driver for the transportation of goods entrusted to Seaboard by the United States Army whenever Seaboard lacked sufficient equipment to transport such goods. Rampone Brothers reserved the right, however, to refuse compliance with Seaboard's request if they needed the equipment for their regular business. The driver furnished by Rampone Brothers was concerned with neither the loading nor the delivery of the goods. He reported to Seaboard's dispatcher at an army camp and was not present while the merchandise was loaded. When the truck and other equipment were loaded, Seaboard delivered to the driver the original and a copy of a "dray tag" and requested him to sign another copy as a receipt. The dray tag was issued on a form furnished by Seaboard. Under the agreement between Seaboard and Rampone Brothers the latter received compensation that was about 20 per cent less than the compensation the army paid Seaboard. Rampone Brothers' driver was subject to Seaboard's instructions as to the handling and transportation of the goods. He was not even to take part in the loading or delivery of the goods, although such services formed an important part of the duties of Rampone Brothers with regard to their other business. Seaboard determined what part of the goods entrusted to it was to be carried by its own equipment, by that furnished by Rampone Brothers or by other subhaulers. These undisputed facts demonstrate that the services that Rampone Brothers rendered to Seaboard were substantially different from the services for which they held themselves out to the public as a common carrier. If the services in question were those of a common carrier, it would follow that Rampone Brothers were under obligation to furnish their equipment and drivers to anyone upon the same conditions they were furnished to Seaboard. It is not the duty of a common carrier, however, to place his equipment and personnel under the control of another carrier.

An inference that Rampone Brothers acted as a common carrier in rendering the services in question cannot be drawn from the mere fact that they were licensed, and upon other

occasions operated, as a radial highway common carrier. It was shown by the uncontradicted evidence that the special services rendered Seaboard were entirely different from the services rendered the public generally as a common carrier. To hold that such an inference could be drawn despite the uncontradicted evidence as to the special nature of the services is equivalent to holding that the jury could disregard the rule that a common carrier may contract to render services as a private carrier. It is also immaterial that as a common carrier Rampone Brothers sometimes carried commodities other than fruit, vegetables, and canned goods, for the determination of their status in this case depends, not on the kind of goods carried, but upon the circumstances under which the services were rendered.

It is unnecessary to determine whether Rampone Brothers merely leased their equipment to Seaboard or whether they acted as a contract carrier. In neither event would they be liable as a common carrier.

The order granting a new trial should be reversed, and the judgment should be affirmed.

Plaintiffs and Appellants' petition for a rehearing was denied April 10, 1947. Carter, J., and Traynor, J., voted for a rehearing.